COLORADO PUMP & SUPPLY COM-
PANY, a Colorado corporation,
Plaintiff-Appellant,

v.

FEBCO, INCORPORATED, a corpora-
tion, et al., Defendants-Appellees.

No. 72–1204.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 19, 1972.

Decided Jan. 5, 1973.

Rehearing Denied Feb. 7, 1973.

James C. Bull, Denver, Colo. (Creamer & Creamer and Quiat & Quiat, Denver, Colo., on the brief), for plaintiff-appellant.

M. Dee Biesterfeld, Denver, Colo. (E. L. Fraser, Los Angeles, Cal., and Doyle & Biersterfeld, Denver, Colo., on the brief), for defendants-appellees.

Before LEWIS, Chief Judge, and MURRAH and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In this private antitrust suit the issues are whether actions of defendants-appellees Febco, Incorporated, and Thompson Pipe & Steel Company violate the federal antitrust laws. The district court held for the defendants and dismissed the action. We affirm.

Febco manufacturers lawn and turf equipment. Thompson and plaintiff-appellant Colorado Pump & Supply Company are competing wholesale distributors of such equipment in the Colorado area. An important item is the control

device for sprinkling systems. Until January 16, 1967, Thompson, Colorado Pump, and other distributors purchased from Febco and received a 50% discount. Colorado Pump had a franchise agreement with Rainbird, a competitor of Febco, and limited its Febco purchases to controllers. The trial court found that other controllers on the market were competitive with, and satisfactory substitutes for, the Febco controllers.

On the mentioned date Thompson and Febco made a written agreement whereby Thompson became the exclusive Febco distributor in a geographically defined area. Thompson received a 50/10% discount on package quantities and 50% on broken package quantities. Other contract provisions will be discussed later. After the agreement, Febco refused to sell directly to Colorado Pump which could, and did, purchase Febco products from Thompson at a 35% discount on parts and 40% discount on complete line equipment. These were the same discounts given all other distributors and jobbers by Thompson.

With the 35% discount Colorado Pump could not make a profit on sales of controllers and discontinued handling the Febco controller with a resulting loss in business. The complaint alleged that Colorado Pump lost $150,000 in profits; that the actions of Febco and Thompson violated §§ 1, 2, and 14 of Title 15 U.S.C.; and that Colorado Pump is entitled to treble damages. Trial to the court was had on the issue of liability, with damages reserved for later consideration. The court made findings of fact and concluded that Febco and Thompson had not violated the federal antitrust laws.

The contract between Febco and Thompson authorizes Thompson "to sell within the following territory [here follows a description including Colorado and some adjacent area]." Title to the purchased products passes to Thompson at Febco's shipping point. Colorado Pump says that these contract provisions are a per se Sherman Act violation because a manufacturer has imposed vertical restrictions as to territory on a product, title to which has passed from the manufacturer to the distributor.

Prime reliance is placed on United States v. Arnold, Schwinn & Co., 388 U. S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249, which Colorado Pump says establishes the rule that if the producer passes dominion and title to the distributor, territorial restrictions imposed by the producer are per se violative of the antitrust laws. In Schwinn, the Court commented that the producer had been "firm and resolute" in its insistence upon the limitations and that firmness "was grounded upon the communicated danger of termination." 388 U.S. at 372, 87 S.Ct. at 1862. We agree with the Second Circuit that the holding in Schwinn was predicated on the "firm and resolute" insistence on compliance. Janel Sales Corp. v. Lanvin Parfums, Inc., 2 Cir., 396 F.2d 398, 406, cert. denied 393 U.S. 938, 89 S.Ct. 303, 21 L.Ed. 2d 275.

■ Our case is different from Schwinn. We have no explicit contract restriction. Nothing in the contract forbids, or even touches on, sales by Thompson outside of the territory. The trial court found, and we agree, that the contract "contained no resale restrictions with regard to whom Thompson could sell or at what price." Further, no "firm and resolute" action of Febco insisted upon observance of any territorial restriction. The Manager of the Irrigation Division of Thompson testified that although Thompson had not made sales outside of the allocated territory, it was not prohibited from doing so. The Manager of Febco testified that "there was no authorization or no restriction to my knowledge" on Thompson sales outside of the territory. Our situation is a far cry from that considered in Schwinn.

■ The contract provision with which we are concerned is no more than a description of a primary marketing territory and as such is not a per se violation. Plastic Packaging Materials,

Inc. v. Dow Chemical Co., E.D.Pa., 327 F.Supp. 213, 225; see also Janel Sales Corp. v. Lanvin Parfums, Inc., 2 Cir., 396 F.2d 398, 406, cert. denied 393 U.S. 398, 89 S.Ct. 303, 21 L.Ed.2d 275. Contrary to Colorado Pump's assertion, Interphoto Corp. v. Minolta Corp., S.D.N.Y., 295 F.Supp. 711, aff'd 2 Cir., 417 F.2d 621, did not hold that a per se violation could be found on the basis of a mere contractual provision. In that case, the court found that Minolta had persistently advised its distributor against unwanted incursions into restricted areas. 295 F.Supp. at 720. The record before us is devoid of any suggestion that Febco had even admonished Thompson to confine its sales to the described territory.

■ In our opinion the attacked contract provision is not a per se Sherman Act violation. When coupled with the other evidence in the record, it shows no violation. A manufacturer may select the customers to whom he will sell so long as his conduct has no monopolistic or market control purpose. New Home Appliance Center v. Thompson, 10 Cir., 250 F.2d 881, 884. Here we have no price fixing and no evidence of market control. The trial court found that the marketing of lawn and turf equipment "is highly competitive on a national and regional basis." We have nothing more than a vertical confinement of sales to a selected customer of a product which is competitively available from others. This is not enough to establish a Sherman Act violation. Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., 9 Cir., 416 F.2d 71, 76, cert. denied 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755, and cases there cited.

■ Under the contract, Thompson was obligated to "maintain adequate inventories of products and parts which will enable Distributor to offer for sale a complete line of said products and service them after installation." Colorado Pump argues that this is an impermissible tying arrangement in that the requirement that the complete line be stocked is tied to the right to acquire the desirable Febco controller. A tying arrangement is an agreement by a party to sell a product but only on the condition that the buyer also purchases a different (or tied) product or at least agrees that he will not purchase that product from any other supplier. Northern Pac. R. Co. v. United States, 356 U.S. 1, 5–6, 78 S.Ct. 514, 2 L.Ed.2d 545.

■ A tying arrangement is a per se Sherman Act violation if (1) the seller has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product, and (2) a "not insubstantial" amount of commerce is foreclosed to competitors. Fortner Enterprises, Inc. v. United States Steel Corp., 394 U.S. 495, 499–500, 89 S.Ct. 1252, 22 L.Ed.2d 495, quoting Northern Pac. R. Co. v. United States, 356 U.S. 1, 5–6, 78 S.Ct. 514, 2 L.Ed.2d 545.

The claim of adverse economic impact rests upon the desirability of the Febco controller. Although there was evidence that Colorado Pump considered the Febco controller to be superior, there was none that Thompson, the supposed victim of the tying arrangement, was of the same opinion. Competent evidence of the availability and suitability of alternative products was relevant. Elder-Beerman Stores Corp. v. Federated Department Stores, Inc., 6 Cir., 459 F.2d 138, 144. The trial court found on conflicting evidence that: "Other controllers on the market were competitive with and satisfactory substitutes for the Febco controllers." This negates any inference of sufficient economic power to restrain free competition. It should be noted in passing that here we have no conditioning of the right to purchase controllers on the purchase of worthless products, no evidence of the imposition of burdensome terms by Febco, no restriction on the right of Thompson to distribute products in competition with those of Febco, no evidence that the prices of the balance of the Febco line

were inflated, and no evidence that Febco used any coercion on Thompson.

■ The other requirement for a per se violation by a tying agreement is the foreclosure of a substantial amount of commerce to competitors. It is conceivable that the need to maintain adequate inventories might affect commerce by providing impetus to sell products of the manufacturer rather than those of another. Be that as it may, there is no evidence of the cost of maintaining the necessary inventory or of its effect on Thompson sales. The trial court held that in the competitive industry Thompson is free to sell products of Febco's competitors. The mere existence of the requirement that the full line be stocked, without additional information about its competitive impact, does not suffice to establish an unreasonable restraint of trade. Cf. Tampa Electric Co. v. Nashville Coal Co., 365 U.S. 320, 325–329, 81 S.Ct. 623, 5 L.Ed.2d 580. We are convinced that the record shows no impermissible tying arrangement.

■■ Colorado Pump argues that a Sherman Act violation, monopolization of the Colorado market, was accomplished through the use of a price discrimination scheme prohibited by the Robinson-Patman Act, 15 U.S.C. § 13. Perhaps it is enough to say that we find nothing in the record to sustain the claim of monopolization. We also find no Robinson-Patman violation. That Act prohibits price discrimination "between different purchasers" and does not prevent persons selling goods in commerce "from selecting their own customers in bona fide transactions and not in restraint of trade." After its agreement with Thompson, Febco stopped selling to Colorado Pump. The record shows only a refusal to deal, not price discrimination. Colorado Pump had to buy Febco products from Thompson at a greater price than Thompson had to pay but at the same price charged to other purchasers from Thompson. Cherokee Laboratories, Inc. v. Rotary Drilling Services, Inc., 5 Cir., 383 F.2d 97, cert. denied 390 U.S. 904, 88 S.Ct. 816, 19 L.

Ed.2d 870, is not in point. The court there recognized the holding in Schwinn that vertical refusals to deal are immunized so long as there are competitive products readily available to others, 388 U.S. at 376, 87 S.Ct. 1856, and held that a jury question was presented on the issue of whether competitive products were available, 383 F.2d at 105. In the instant case, the trier of the fact found that competitive products were available.

■ Colorado Pump argues that the Febco-Thompson contract contains an impermissible customer restriction. The contract says that "in no event shall Distributor's retail sales exceed one-third (⅓) of Distributor's annual sales volume." As we read the record, this argument was not part of the legal theory upon which the case was tried. Cf. Stephens Industries, Inc. v. Haskins & Sells, 10 Cir., 438 F.2d 357, 361. If it was, no evidence was adduced as to the total sales, the sales to distributors, the sales to retailers, or of any efforts by Febco to enforce the provision. Nothing shows that the restriction was unreasonable or that any purchaser, wholesale or retail, did or could suffer in the highly competitive industry with adequate substitutes readily available. We find nothing in Schwinn or any other authority holding that the attacked provision is a per se Sherman Act violation.

Finally, Colorado Pump attacks the findings of the trial court on the ground of inadequacy. In our opinion the findings are adequate, sustained by substantial evidence, and not clearly erroneous.

Affirmed.

MURRAH, Circuit Judge (dissenting in part):

I dissent only from so much of the opinion of the court which holds that the Febco-Thompson Pipe & Steel Company contract did not violate § 1 of the Sherman Act, which condemns "[e]very contract . . . in restraint of trade . . . ." The statutory language has been tempered by the rule of reason in some vertical relationships. See United

States v. Topco Associates, 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972).

But *Schwinn* decrees that vertical territorial restrictions after title has passed are *per se* violations of the Act. In my view, we have just such a contract here. The majority seem to make the case turn on the vagueness of the restrictions on sales outside the authorized territory. They say that it authorizes Thompson to sell within a given territory but does not expressly forbid sales outside that territory. But there have been no sales outside the explicitly allocated territory, and we are left to speculate on what would happen if such extra-territorial sales were, in fact, made. I do not believe that the legality of a contract such as this one should be made to turn on whether the contractual restrictions are "firmly and resolutely" enforced. Otherwise, *Schwinn* is a shambles.