**Keith B. REDD, d/b/a Abajo Petroleum, Appellee,**

v.

**SHELL OIL COMPANY, Appellant.**

No. 74–1800.

United States Court of Appeals, Tenth Circuit.

Nov. 3, 1975.

William Simon, Washington, D. C. (Michael W. Graney and Richard G. White, Washington, D. C., Marvin J. Bertoch and Merlin O. Baker, and Howrey, Simon, Baker & Murchison, and Ray, Quinney & Nebeker, Salt Lake City, Utah, of counsel, with him on the brief), for appellant.

Daniel L. Berman, Salt Lake City, Utah (Douglas J. Parry and Berman & Giauque, Salt Lake City, Utah, with him on the brief), for appellee.

Before HILL, SETH and McWILLIAMS, Circuit Judges.

SETH, Circuit Judge.

The plaintiff, Keith B. Redd, has been engaged in the business of marketing gasoline and other petroleum products in Utah and Arizona, doing business as Abajo Petroleum. As to defendant Shell, he operated as a "jobber," that is one who resells at wholesale petroleum products purchased from Shell to service stations and other commercial accounts. Redd's contract with Shell was known as a "sales contract." It was terminated by Shell, and plaintiff began this action.

Redd's original complaint charged (1) that Shell and Continental Oil Company

had conspired in violation of the antitrust laws to eliminate competition, to restrict his territory and to terminate his contract with Shell, and (2) that Shell had breached its "jobber" contract. Shell answered with a general denial and counterclaimed on two counts, (1) payment due on open account, and (2) damages for illegally "palming off" other gasoline under the Shell trademark. Continental was dismissed from the suit. Redd filed an amended complaint which realleged claims of territorial restriction and breach of contract and asserted in a new count that Shell violated antitrust law by illegally "tying" the use of its trademark to purchase of its gasoline.

The trial court decided several issues as questions of law on pretrial motions for summary judgment. The remaining issues, basically damage questions, were submitted to a jury which returned a verdict for plaintiff. The defendant has taken this appeal.

A basic pretrial determination made by the trial court was that the jobber sales contract between plaintiff and Shell contained a tying arrangement in violation of the Sherman Act, 15 U.S.C. § 1. Should there be such an arrangement, it would be a per se violation if the requisite economic power and market control are shown. The Supreme Court in *Northern Pacific Ry. v. United States,* 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545, and in *Times-Picayune Publishing Co. v. United States,* 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277, has defined a tying arrangement as an agreement whereby a product is sold on the condition that the buyer also purchase a different product, the "tied product," from the seller. The consequences in the market of the tied product are apparent. A variation on the typical tying arrangement is also expressed in section 3 of the Clayton Act, 15 U.S.C. § 14.

The trial court thus decided as a matter of law that the sales contract constituted a tying arrangement between the gasoline sold to plaintiff under the contract as one "product," and the Shell trademark which he was permitted to use thereunder if he wished to do so as the other "product." The gasoline (and related petroleum products) and the trademark thus were held to be the two distinct products by the trial court's order on the tying issue. The order was entered on plaintiff's motion for partial summary judgment and thus decided the liability issue under section 1 of the Sherman Act before the case was tried to a jury.

We will consider only the "two product" aspect of the arrangement, and the trial court's view thereof. The contract between the parties permitted the plaintiff to use the Shell trademark in connection with the sale of petroleum products. It also prohibited the plaintiff from selling the products from other sources under the Shell trademark. The contract, referring to plaintiff as the Buyer, in part provided:

"... Buyer shall have the right to sell, under Shell's trademark, brand names and color schemes, the products purchased hereunder, for tank truck delivery. ..."

Also it stated:

"... Buyer shall not sell, under Shell's trademark, brand names or color scheme ... any product other than ... purchased hereunder. ..."

The contract was a sales agreement to create a jobber relationship between Shell and plaintiff as above mentioned. The plaintiff was in business, had his own bulk stations and trucks, and did business as Abajo Petroleum. He was not doing business as Shell Oil Company, and he sold products represented to be from sources other than Shell. He had his own business enterprise and entity identified under his own name. Thus he did not have a "franchise" as the term has come to be used. The trademark use had nothing to do with the manner in which plaintiff did business, and he was not obligated to sell Shell gasoline as Shell gasoline. Thus the trademark could be a representation, if plaintiff

wanted to make it, that the gasoline was Shell gasoline and thus either made by or for Shell. Plaintiff was to do nothing with the gasoline other than to buy it from Shell, receive it, store it, and transport it to his customers. The record shows that when the contract in question terminated, the next day he became a jobber for Exxon.

The permissive trademark use did not in any way transform the mark into a separate product to be sold to plaintiff. The provisions for use of the trademark were designed for the sale of a liquid product in bulk. The most important product sold was the gasoline, and this was a typical sale of a trademark product. *See* 15 U.S.C. § 1112; *Associated Press v. Taft-Ingalls Corp.,* 340 F.2d 753 (6th Cir.), and *Trail Chevrolet, Inc. v. General Motors Corp.,* 381 F.2d 353 (5th Cir.). If the product had been packaged in some way, the consequences would have been the same, and the product sold as one marked package. There was certainly no one else in the market selling the Shell trademark, and Shell was not selling its trademark separately; it cannot be considered as a "product."

The plaintiff asserts that the case of *Siegel v. Chicken Delight, Inc.,* 448 F.2d 43 (9th Cir.), is persuasive. This concerned a typical fast food franchise which consisted basically of the use of a trademark or name if the business was conducted in a prescribed way and in a place with a required appearance. This is quite different from the typical sale of a trademarked product as we have before us. *See Drexel Enterprises, Inc. v. Richardson,* 312 F.2d 525 (10th Cir.), and *National Nu Grape Co. v. Guest,* 164 F.2d 874 (10th Cir.). The case is not in point sufficiently to assist us in solving our problem. Also we do not necessarily agree with its analysis of the problem. *See also Warriner Hermetics, Inc. v. Copeland Refrig. Corp.,* 463 F.2d 1002 (5th Cir.); *Susser v. Carvel Corp.,* 332 F.2d 505 (2d Cir.); *Aamco Automatic Transmissions, Inc. v. Tayloe,* 368

F.Supp. 1283 (E.D.Pa.), for decisions related to the *Chicken Delight* opinion.

■ The trial court was thus in error in considering the trademark as a separate product sold under a tying arrangement with the gasoline. We said in *Colorado Pump & Supply Co. v. Febco, Inc.,* 472 F.2d 637 (10th Cir.), that two different products must be involved before there can be a tying arrangement, and the essential ingredients of a prohibited tying arrangement were therein described. *See also Fortner Enterprises, Inc. v. United States Steel Corp.,* 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495, and the dissent therein. This error in the determination of liability requires a reversal of this case, as much of what followed in the proceedings was based thereon. There are some other related issues and some separate issues which should be decided on this appeal.

The trial court also decided as a matter of law that there was a per se violation of the Sherman Act in the contract provisions relating to the territory in which plaintiff was to market. This violation was considered by the court to defeat, on summary judgment motion, Shell's counterclaim against plaintiff for passing off gasoline purchased from other sources as Shell gasoline. See trial court's order of February 15, 1974, granting plaintiff summary judgment on Shell's counterclaim. The determination is carried over into the trial court's instructions.

The sales agreement did contain definite provisions as to plaintiff's "territory," and a map was attached to the agreement on which it was so marked. The agreement thus contained clear restrictions on the area within which plaintiff could sell.

■ This court, in *Colorado Pump & Supply Co. v. Febco, Inc.,* 472 F.2d 637 (10th Cir.), expressly held that the existence of such contract provisions, standing alone, does not create a per se violation of the Sherman Act. The cited case was based on the opinion in *United States v. Arnold, Schwinn & Co.,* 388

U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249, and cited with approval *Janel Sales Corp. v. Lanvin Parfums, Inc.,* 396 F.2d 398 (2d Cir.). This court thus held that in addition to contract provisions for territorial restrictions, there must be a "firm and resolute" action by the seller to enforce such limitations. The "firm and resolute" terminology comes from the trial court's characterization of the defendants' efforts in the *Schwinn* case. *Adolph Coors Co. v. FTC,* 497 F.2d 1178 (10th Cir.), was cited as a contrasting case wherein Coors had "rigorously enforced its territorial restrictions." For an application of similar principles, *see, Belliston v. Texaco, Inc.,* 455 F.2d 175 (10th Cir.).

In view of the above cited cases, it was error for the trial court to decide as a matter of law that the existence of contractual limitations was sufficient. For there to be a violation, the fact question of enforcement or compliance had to be determined. This error was also carried over into the instructions to the jury wherein the court stated in two places that the territorial restrictions in the agreement constituted a per se violation.

 As mentioned above, the trial court on summary judgment eliminated a counterclaim of defendant. During the course of discovery, the defendant asserts that it became known to it for the first time that plaintiff had been selling gasoline purchased from Plateau and other sources as Shell gasoline. Defendant then counterclaimed for trademark infringement and "palming off" in violation of the Lanham Act, 15 U.S.C. § 1114. The defendant sought summary judgment as did the plaintiff. The plaintiff's motion was granted on the basis of the tying arrangement above considered. Upon our holding the trial court was in error in so disposing of this counterclaim, and it must be reinstated.

There were further disagreements between the parties as to the meaning of certain of the contract provisions especially as to commission payments under certain conditions. We do not decide these issues in view of the disposition of the case.

We must reverse. The judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.