**WISDOM RUBBER INDUSTRIES, INC., a Hawaii Corporation, Plaintiff,**

v.

**JOHNS–MANVILLE SALES CORPORATION, a Delaware Corporation, Defendant.**

**Civ. No. 74–124.**

United States District Court, D. Hawaii.

June 29, 1976.

Alexander C. Marrack, Anthony, Hoddick, Reinwald & O'Connor, Honolulu, Hawaii, for plaintiff.

William M. Swope, Robert A. Rowan, Cades, Schutte, Fleming & Wright, Honolulu, Hawaii, for defendant.

## DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

WONG, District Judge.

On June 5, 1974, Plaintiff Wisdom Rubber Industries, Inc. ("Wisdom") filed this antitrust action against defendant Johns-Manville Sales Corporation ("Johns-Manville") alleging a conspiracy in restraint of trade and an attempt to monopolize the sale of plastic pipe and sprinkler fixtures for irrigation in the State of Hawaii, in violation of §§ 1, 2 and 3 of the Sherman Act[1] and §§ 480–2, 480–4 and 480–9 of the Hawaii Revised Statutes, as amended.

This action is ripe for summary judgment. Adequate time has been available for the purpose of conducting discovery. Furthermore, this Court knows of no dispute as to any material fact needed to decide the present motion. The facts necessary for resolution of this motion are taken from Wisdom's answers to interrogatories and the depositions.

Plaintiff Wisdom was the non-exclusive distributor in Hawaii of Johns-Manville irrigation pipes from late 1970 until December 31, 1973. Effective as of January 1, 1974, however, defendant Johns-Manville canceled its arrangement with Wisdom and entered into an exclusive distributorship for these pipes with Hawaiian Irrigation Supply Co. ("HISCO"). This cancellation of Wisdom's right to distribute these types of pipe, "PIP" and "T-pipe," forms the basis of plaintiff's antitrust claims. Johns-Manville's alleged reason for the cancellation and transfer of the distributorship rights for these two pipes was that HISCO would better service the products since it specialized in the sale of irrigation items. Wisdom, on the other hand, was allegedly too diversi-

1. Wisdom's claim under § 3 of the Sherman Act must be dismissed since that section applies only to antitrust actions arising in the District of Columbia, territories of the United States, or between these entities and foreign states.

fied to devote complete attention to marketing the Johns-Manville pipes.[2]

The pipes which are the subject of this action are commonly used for agricultural irrigation. "PIP" is an acronym for "plastic irrigation pipe," and the other pipe is a small diameter asbestos cement pipe known as "T-pipe." Other manufacturers besides Johns-Manville produce both types of pipe. "PIP" is produced by Certain-teed, Simpson Extruded Plastics Co., Gaspro, Inc., and the Aluminum Supply Co., by well as by Johns-Manville.[3] "T-pipe" is also produced by Certain-teed.[4] Thus, alternative sources of pipe existed for plaintiff Wisdom at the time Johns-Manville canceled its distributorship.

### Wisdom's Sherman 1 Claim

█ Wisdom's claim under § 1 of the Sherman Act is based on the allegation that Johns-Manville conspired with HISCO to restrain trade and monopolize the sale of plastic pipe and sprinkler fixtures in the State of Hawaii. Wisdom's case, however, must fail since it cannot present any facts which demonstrate the existence of a conspiracy between Johns-Manville and HISCO.[5] Wisdom's Sherman 1 claim rests solely on the fact that the defendant canceled Wisdom's distributorship on January 1, 1974.

█ It is well settled that the mere cancellation of a distributorship is not a violation of the antitrust laws. *See Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke and Liquors, Ltd.*, 416 F.2d 71 (9th Cir. 1969), *cert. denied*, 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970); *Ace Beer Distributors, Inc. v. Kohn, Inc.*, 318 F.2d 283, 297 (6th Cir. 1963), *cert. denied*, 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 166 (1963); *Parmelee Transp. Co. v. Keeshin*, 292 F.2d 794 (7th Cir. 1961), *cert. denied*, 368 U.S. 944, 82 S.Ct. 376, 7 L.Ed.2d 340 (1961); *Packard Motor Car Co. v. Webster Motor Car Co.*,

100 U.S.App.D.C. 161, 243 F.2d 418 (1957), *cert. denied*, 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 38 (1957); *Naifeh v. Ronson Art Works*, 218 F.2d 202 (10th Cir. 1954).

In support of its tenuous allegation of conspiracy, plaintiff advances the proposition that the cancellation of a distributorship at a time when there is a shortage of alternative sources of supply constitutes a violation of § 1 of the Sherman Act. Plaintiff relies on interpretation of language taken from *United States v. Arnold Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967) and *Elder-Beerman Stores Corp. v. Federated Department Stores, Inc.*, 459 F.2d 138, 146 (6th Cir. 1972). Plaintiff relies on the following language:

> At the other extreme, a manufacturer of a product other and equivalent brands of which are available in the market may select his customers, and for this purpose he may "franchise" certain dealers to whom, alone, he will sell his goods. Cf. *United States v. Colgate & Co.*, 250 U.S. 300 [39 S.Ct. 465, 63 L.Ed. 992] (1919). If the restraint stops at that point—if nothing more is involved than vertical "confinement" of the manufacturer's own sales of the merchandise to selected dealers, and if competitive products are readily available to others, the restriction, on these facts alone, would not violate the Sherman Act. It is within these boundary lines that we must analyze the present case. 388 U.S. 365, 375 [87 S.Ct. 1856, 18 L.Ed.2d 1249] (1967).

This Court reads this language as defining what practices constitute clearly permissible conduct. The inverse does not necessarily create a legal standard—that if alternative sources of supply do not exist, then the mere termination of a distributorship without more constitutes a violation of the Sherman Act.

---

2. *See* Humphry's deposition, pp. 33–34.

3. *See* Humphry's deposition, pp. 77–79. *See also* Wisdom's deposition, pp. 18–19.

4. *Ibid.*

5. *See* Wisdom's deposition, p. 22; Mizukami's deposition, pp. 60–61; also, Komae's deposition, pp. 33–34.

Similarly, plaintiff seems to be reading the following language from *Elder-Beerman Stores Corp. v. Federated Department Stores, Inc.,* 459 F.2d 138 (6th Cir. 1972), to create a rule that if there exists an exclusive dealing arrangement and no adequate alternative products are available to the excluded dealer, then the defendant has violated § 1 of the Sherman Act:

We cannot accept the plaintiff's claim that there was a restraint of trade as to the articles involved because of Rike's exclusive arrangements with the suppliers without competent evidence relating to the availability and suitability of alternative lines. The fact that Elder-Beerman desired to sell the lines did not make the articles involved so unique as to eliminate the need for such evidence. 459 F.2d 138, 144.

However, in considering the above language, this Court finds no authority for the proposition that the termination of an exclusive distributorship and the subsequent creation of a new exclusive distributorship at a time when there are no adequate sources of supply for a similar product constitutes a *per se* violation of § 1 of the Sherman Act.

■ Rather, it appears that the antitrust potential in such a situation must be evaluated in terms of a rule of reason. *See Standard Oil Co. of New Jersey v. United States,* 221 U.S. 1, 66, 31 S.Ct. 502, 55 L.Ed. 619 (1911); *Chicago Board of Trade v. United States,* 246 U.S. 231, 238, 38 S.Ct. 242, 62 L.Ed. 683 (1918); *Northern Pacific Railway Co. et al. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958).

Certainly one of the essential elements in evaluating the reasonableness of the termination of one exclusive distributorship in favor of another would be the effect such a transfer would have on competition in the marketplace:

So here we must look to the specifics of the challenged practices and their impact upon the marketplace in order to make a judgment as to whether the restraint is or is not "reasonable" in the special sense in which § 1 of the Sherman Act must be read for purposes of this type of inquiry. *United States v. Arnold Schwinn & Co.,* 388 U.S. 365, 374, 87 S.Ct. 1856, 1863, 18 L.Ed.2d 1249 (1967).

Thus, this Court reads the language put forth from the *Elder-Beerman* case as simply holding that in order to prove a violation of § 1 of the Sherman Act, the plaintiff must prove that the exclusive dealing arrangement produced an unreasonable restraint on trade such as the creation of a monopoly or the elimination of competition. One means of disproving any adverse effects upon competition would be for the defendant to put forth evidence that there exists an adequate supply of alternative brands of the same product. In *Elder-Beerman,* the question was whether one brand of merchandise, for example, Serta mattresses, was an adequate alternative for another brand, Stearns and Foster Mattresses. The failure to demonstrate that the brands were interchangeable tended to show the lack of existing adequate alternatives, the showing of which would have supported the defendant's contention that its exclusive dealing arrangement was reasonable. In *Elder-Beerman,* plaintiffs failed to adduce sufficient evidence to prove that the brands were not interchangeable alternatives.

Thus, plaintiff's theory of law is not supported by the cases. Moreover, plaintiff cannot even reach first base in that the affidavits and the depositions fail to show that there was no adequate alternative source of supply for "PIP" and "T-pipe." [6]

*Wisdom's Tying Theory*

■ Wisdom argues that Johns-Manville has illegally tied the sale of its pipe products to the sale of sprinklers and other accessories. In order to prove the existence of an illegal tying arrangement, Wisdom must prove that there exists some contract, agreement, or condition whereby the defendant, Johns-Manville, will sell certain goods (the tying product) only on the condi-

---

**6.** *See* Humphry's deposition, pp. 33–34 and 77–79.

tion that the plaintiff also purchase other goods of the defendant (the tied product). *Northern Pac. R. Co. v. United States*, 356 U.S. 1, 5–6, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); *Colorado Pump and Supply Co. v. Febco, Inc.*, 472 F.2d 637, 640 (10th Cir. 1973), *cert. denied*, 411 U.S. 987, 93 S.Ct. 2274, 36 L.Ed.2d 965 (1973).

Wisdom's claim must be rejected since Wisdom has not alleged any facts indicating any agreement or understanding between Johns-Manville and either Wisdom or its competitor, HISCO, tying Johns-Manville's pipe products to sprinkler heads and accessories, nor has Wisdom alleged any threats or coercion imposed on it by Johns-Manville in that regard. Depositions of Wisdom's own personnel nullify any such inference.[7]

### Wisdom Alleges Illegal Customer Restraints

■ In an attempt to state a claim for relief, Wisdom argues that Johns-Manville violated § 1 of the Sherman Act in imposing customer restraints declared illegal in *United States v. Arnold Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1969). In page 12 of its memorandum in opposition to this motion for summary judgment, Wisdom alleges the following misdeeds on the part of the defendant:

> Even before its termination as a distributor of Johns-Manville pipe for the Hawaii ag and turf markets, Wisdom in 1973 was unable to get orders destined for these markets filled by Johns-Manville. A separate distribution agreement between JMSC and Wisdom was altered by Johns-Manville after signing to exclude small diameter "T" pipe suitable for the ag market. Furthermore, any subsequent orders for any type of pipe placed by Wisdom which ended up in the ag or turf markets would not be credited to, or compensable to, the non-Ag-Turf division salesmen filling them, if indeed they were filled at all. These facts, and certainly the inference therefrom, amount to the

imposition on Wisdom by JMSC of customer restraints with regard to the further disposal of pipe ordered or purchased by Wisdom from Johns-Manville.

This Court fails to see how the failure to credit the non-Ag-Turf salesmen amounts to a customer restriction which has been prohibited under the *Schwinn* rule. This practice, if proven, may result in the reluctance of certain salesmen to sell these pipes, but it does not constitute a restriction on territory or on customers who always have the right to purchase the pipe. *See Colorado Pump and Supply Co. v. Febco*, 472 F.2d 637 (10th Cir. 1973), *cert. denied*, 411 U.S. 987, 93 S.Ct. 2274, 36 L.Ed.2d 965 (1973).

### Wisdom's Sherman 2 Claims

■ Wisdom alleges that the defendant violated § 2 of the Sherman Act by monopolizing and attempting to monopolize the pipe irrigation market. In order to support its attempted monopolization charge, the plaintiff must prove two elements: first, an intent to monopolize and, second, either market dominance or substantial restraint of trade creating a dangerous possibility of success. *American Tobacco Co. v. United States*, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); *Swift & Co. v. United States*, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518 (1905); *Lourain Journal Co. v. United States*, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951). Plaintiff has presented no evidence of either of these elements.

### Agricultural Market

It seems readily apparent that Wisdom is the dominant firm in agricultural pipe and sprinklers in Hawaii. According to Wisdom's general manager, prior to the cancellation of its Johns-Manville agri-turf distributorship, Wisdom was selling 80% of the sprinkler systems (including pipes) for the plantations and had 80% of the total agricultural market for pipe and sprinklers as well as 20% of the turf market. The general manager also testified that the agricul-

7. *See* Wisdom's deposition, p. 22; Mizukami's deposition, pp. 60–61; and Komae's deposition, pp. 26–27.

tural market represented 75% of the total volume of sales in both markets.[8] His testimony also showed that after the cancellation by Johns-Manville, Wisdom still had 80% of the agricultural market as of November 1974.

Drip tubing is a concept developed by Wisdom which is used exclusively by sugar plantations. Although the tubing is manufactured by another firm, Wisdom owns the dies, having transferred the patent rights in exchange for the sales rights. According to the president of Wisdom, Wisdom's share of the drip tubing market was 50% prior to termination and approximately 55 to 60% following termination.[9]

Wisdom argues that in an attempt-to-monopolize case, only intent is at issue and that when substantial restraints of trade are present, no actual power to monopolize need be shown. However, intent, without some probability of success, is mere wishful thinking and not the type of activity which the antitrust laws were designed to protect. *Lourain Journal Co. v. United States*, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951); *Swift & Co. v. United States*, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518 (1905). Moreover, impossibility in fact has always been a defense to a charge of attempted monopolization. *Cliff Food Stores, Inc. v. Kroger, Inc.*, 417 F.2d 203, 207 (5th Cir. 1969)..

*Turf Market*

Wisdom also alleges that Johns-Manville attempted and has actually monopolized the sales of both pipe and sprinklers in what it defines as the Hawaii turf irrigation market. Without determining whether or not this sub-market is a relevant one, this Court must dismiss plaintiff's claim.

Wisdom's claim is based on Johns-Manville's cancellation of Wisdom's distributorship of irrigation pipe. However, an examination of the depositions of Wisdom personnel shows that the primary pipes used in the turf market are Class 160 pipe and Class 200 PVC (polyvinyl chloride) pipe.[10] It was not this type of pipe but rather "PIP" and "T-pipe" which were removed from Wisdom's distribution.

Thus, a refusal to deal in these two pipes has no relevance to the intent necessary to prove an attempted monopolization of the turf irrigation market. Certainly the cancellation of the distributorship of the pipes used in the turf irrigation market would be more consistent proof of an attempt to monopolize that market.

*Conclusion*

Wisdom has failed to present any facts which justify continuing with this antitrust action. The facts simply show that there was no agreement or conspiracy to restrain trade in the sprinkler or pipe market. Moreover, Wisdom is clearly the dominant market power in these fields. Subsequent to the cancellation of the distributorship, Wisdom simply became a distributor for a manufacturer who competes with defendant in the production of pipe.[11] Although Wisdom did encounter some problems in converting its customers from ring-type pipe to solvent-weld jointed pipe, apparently such a conversion has been accomplished with no significant loss of business.[12]

Wisdom's claims under the state antitrust laws depend upon the same facts and therefore must fail for the same reasons.

Therefore, it is hereby ordered and adjudged that summary judgment be granted in favor of defendant Johns-Manville Sales Corporation and against plaintiff Wisdom Rubber Industries, Inc.

8. *See* Komae's deposition, pp. 17, 37–39.

9. *See* Wisdom's deposition, pp. 34–35.

10. *See* Humphry's deposition, pp. 19–20, 36.

11. *See* Mizukami's deposition, pp. 26–28.

12. *See* Komae's deposition, pp. 42, 45–46.