**DART INDUSTRIES, INC., Ralph Wilson Plastics Division, Plaintiff-Appellee and Cross-Appellant,**

v.

**The PLUNKETT COMPANY OF OKLAHOMA, INC., an Oklahoma Corporation, Defendant-Appellant and Cross-Appellee.**

**Nos. 81–1404, 81–1454.**

United States Court of Appeals, Tenth Circuit.

April 8, 1983.

Philip R. Russ, Amarillo, Tex. (Douglas L. Boyd, Tulsa, Okl. with him on the brief), for The Plunkett Company of Oklahoma, Inc.

James H. Bellingham of McClelland, Collins, Bailey, Bailey & Manchester, Oklahoma City, Okl., for Dart Industries, Inc., Ralph Wilson Plastics Div.

Before McWILLIAMS, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

These appeals arise out of Dart Industries, Inc.'s termination of The Plunkett Company of Oklahoma, Inc. as its Tulsa area distributor of the laminates and adhesives it manufactures. Dart sued Plunkett for monies owed on Plunkett's purchases, after having given credit for returned inventory. Plunkett counterclaimed, alleging antitrust violations.

■ At trial, the only item in dispute on the accounting issue was the amount of credit to be given for cut sheets of plastic Dart repossessed with the other inventory. Dart gave no credit for these materials. The jury award gave Plunkett credit at the same value per square foot as that given for uncut sheets. Dart appeals this determination. The only question is whether the record contains sufficient evidence to support the verdict. We find there is substantial evidence to support the verdict and therefore affirm the judgment entered on the jury verdict on that accounting.

Plunkett's counterclaim alleged Sherman Act § 1, Clayton Act, and Robinson-Patman Act violations. In the alternative, Plunkett sought damages for breach of contract. A month before trial Plunkett sought to amend its pleadings and add a Sherman Act § 2 claim. This motion was denied. Upon cross motions for summary judgment the court granted summary judgment in favor of Dart and dismissed Plunkett's antitrust claims. Plunkett appeals, asserting that summary judgment was improper in this case because there exist genuine issues as to material facts. We have examined Plunkett's contentions and affirm the trial court's judgment. The situation here involves no more than a manufacturer terminating a distributor with whom it is unhappy and substituting another distributor in its place, sanctioned by *United States v. Colgate & Co.*, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). *See also Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.*, 416 F.2d 71, 78 (9th Cir.1969), *cert. denied*, 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970).

■ Plunkett alleged that the termination was unlawful because it was motivated by anticompetitive purpose or accompanied by anticompetitive effect. Specifically, Plunkett alleged that the termination implicates (1) price fixing, (2) vertical and horizontal territorial allocations, (3) concerted refusals to deal, (4) Robinson-Patman Act violations, and (5) tying arrangements. A party resisting a motion for summary judgment must do more than make conclusory allegations, it "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). This Plunkett did not do. In support of its contention that Dart engaged in price fixing, Plunkett cites three facts: (1) Dart constantly urged Plunkett to lower its prices; (2) on one occasion Dart pressured Plunkett to reduce its prices to a customer; and (3) Dart published a rebate list establishing the amount of rebate Dart would give at particular prices. Neither these facts nor any inferences to be drawn therefrom support the allegation of price fixing. Plunkett retained complete discretion over its pricing policies.

■ Plunkett also argues that Dart's practices of selling directly to large accounts in Plunkett's area or of "taking over" the accounts when the market price drops below that shown on the rebate list constitutes a horizontal customer allocation. This argument is without merit. There is no evidence of a horizontal agreement to

allocate customers. Dart's selling directly to certain large accounts reflects a dual distribution system that standing alone, is perfectly lawful; Dart is simply ensuring a continued presence in the market. Dart's taking over particular accounts from its distributor reflects that there is a certain price level below which Dart will not automatically subsidize a distributor's operation, but rather will determine directly, on a case by case basis, whether to lower its price to meet competition. Plunkett asserts that Dart's refusal to "drop-ship" on behalf of Plunkett into areas serviced by other distributors constitutes an illegal vertical territorial arrangement. This too is without merit. Even rigid vertical territorial divisions are not per se illegal, *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), and the record reflects no injury to competition that is a predicate to illegality under the rule of reason. Furthermore, the Dart policy is not a rigid territorial division; rather, it resembles an "area of primary responsibility" scheme, which is generally lawful. *White Motor Co. v. United States,* 372 U.S. 253, 270–72 & n. 12, 83 S.Ct. 696, 705–07 & n. 12, 9 L.Ed.2d 738 (1963) (Brennan, J., concurring); *Colorado Pump & Supply Co. v. Febco, Inc.,* 472 F.2d 637, 639–40 (10th Cir.), cert. denied, 411 U.S. 987, 93 S.Ct. 2274, 36 L.Ed.2d 965 (1973); ABA Section of Antitrust Law, *Vertical Restrictions Limiting Intrabrand Competition* 20–25 & n. 62 (ABA Monograph No. 2, 1977). In the instant case Dart allows distributors to sell outside their territories; Dart merely refuses to facilitate such sales by direct shipment from the factory. This refusal does not constitute an antitrust violation.

■ In its counterclaim Plunkett alleged that Dart "contacted numerous accounts of Plunkett and its suppliers, directly or indirectly, in an attempt to cause others to refuse to deal and/or boycott Plunkett." However, in its answers to interrogatories and in its deposition testimony Plunkett admitted that the only fact on which it based this allegation was Plunkett's termination as Dart's distributor. The termination alone does not raise an issue as to any material fact relating to a concerted refusal to deal. Neither can the fact that Central Floor Distributors, Inc. and Dart agreed prior to Plunkett's termination that Central Floor would supplant Plunkett support a boycott allegation.

"Lest any other former distributors succumb to the temptation of treble damages, we reiterate that it is simply not an antitrust violation for a manufacturer to contract with a new distributor, and as a consequence, to terminate his relationship with a former distributor, even if the effect of the new contract is to seriously damage the former distributor's business."

*Burdett Sound, Inc. v. Altec Corp.,* 515 F.2d 1245, 1249 (5th Cir.1975). To hold otherwise would require a manufacturer to permit a gap in its product distribution system and would not serve the procompetitive aims of the antitrust laws. Replacing one exclusive distributor with another impairs neither inter- nor intrabrand competition. The record reflects that in the instant case the effect on interbrand competition was procompetitive: after losing the Wilsonart line Plunkett became the Tulsa area distributor for Nevamar, which previously had not been represented in the area. Nor is there any evidence of anticompetitive intent in the termination. Plunkett's allegations regarding concerted refusals to deal were properly resolved on summary judgment.

■ Plunkett's argument that Dart violated the Robinson-Patman Act was also properly resolved on summary judgment. The difference in the prices charged to Plunkett and those charged to direct accounts such as Oklahoma Fixtures do not constitute a' Robinson-Patman violation. *See American Oil Co. v. McMullin,* 508 F.2d 1345, 1352–53 (10th Cir.1975). Illegal price discrimination requires that the same product be sold at different prices to competitors. *Id.* There is no evidence that Oklahoma Fixtures and the other direct accounts were in competition with Plunkett. Furthermore, the record reflects that the lower prices were occasioned by competitive pres-

sures and may well have been within the statutory "meeting competition" defense. See 15 U.S.C. § 13(b). That Central Floor received lower prices than had previously been charged Plunkett also fails to support a Robinson-Patman claim. Plunkett and Central Floors were not in competition for the purchase of Dart products. The price break given Central Floors represents an effort by Dart to subsidize start-up costs. It does not violate the antitrust laws.

■ Plunkett asserts that the termination implicates the prohibition against tying arrangements because it was motivated by Plunkett's failure to adequately promote Wilsonart adhesives. This contention is based on an incident in which, after securing an account for the use of Wilsonart adhesives, Dart discovered that Plunkett had suggested a different brand to the customer. See Brief of Appellant at 29. Dart's reaction does not reflect an attempt to tie adhesives to laminates.

> "James [Plunkett], I appreciate your right to sell other brands, but we ask that you support our efforts when we set up an account. If you feel you cannot, we must reserve the right to sell those accounts on a direct basis."

Letter from Lou Maspero to James Plunkett (October 4, 1977), R. XI, Defendant's Exhibit 44. There is no other evidence in the record to support an allegation of tying, and this incident, standing alone, is too attenuated to provide such support. Nor does this case fit within the rule of Siegel v. Chicken Delight, Inc., 448 F.2d 43 (9th Cir. 1971), cert. denied, 405 U.S. 955, 92 S.Ct. 1172, 31 L.Ed.2d 232 (1972). There, a franchisor insisted that the franchisees purchase its equipment, food, and packaging requirements exclusively from the franchisor. Here, Dart never required Plunkett to forego merchandising other laminates and adhesives. We do not consider the trademark "Wilsonart" to be a product separate from Wilsonart adhesives and laminates. See Redd v. Shell Oil Co., 524 F.2d 1054, 1057 (10th Cir.1975), cert. denied, 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976); Principe v. McDonald's Corp., 631 F.2d 303, 308–09

(4th Cir.1980), cert. denied, 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981). Consequently, Plunkett's tying allegations were properly dismissed on summary judgment.

Although summary judgment in an antitrust case is the exception rather than the rule, Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), we believe that it was proper in this case. The record was significantly developed; it contains nearly 900 pages of deposition testimony of all the principal actors and over 700 pages of pleadings, motions, and exhibits. Our review of the record reveals no factual disputes which, if resolved in Plunkett's favor, would support its antitrust allegations.

■ The district court's grant of summary judgment on the breach of contract claim was also proper. Plunkett's sole complaint in this regard is that reasonable notice of termination was not given. See Brief of Appellant at 32–33. There was no written distribution agreement and Plunkett was given three months notice before the date of termination. Instead of continuing to merchandise Dart products during the three months, Plunkett became a distributor for one of Dart's competitors. Under these circumstances, the notice of termination was reasonable as a matter of law.

■ Finally, the court did not abuse its discretion in refusing to permit Plunkett to amend its counterclaim to allege a Sherman Act § 2 violation. Discovery had been essentially completed. The case was ready to go to trial. The amendment would have changed the entire complexion of the case. Plunkett made no showing that the amendment could not have been made earlier. Rather, it stated that the § 2 claim was based on the same facts alleged from the beginning. See Brief of Appellant at 38. In this situation it was not error to refuse the proffered amendment. See Landon v. Northern Natural Gas Co., 338 F.2d 17, 20 (10th Cir.1964), cert. denied, 381 U.S. 914, 85 S.Ct. 1529, 14 L.Ed.2d 435 (1965); Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir.1979), cert. denied, 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980).

AFFIRMED.