R.L.R. and C.A.R., individually and as parents and next friends of R.L.M.R., a minor, Plaintiffs,

v.

The PRAGUE PUBLIC SCHOOL DISTRICT I–103; David Cox in his capacity as Superintendent of the Prague Public School District I–103; Jack Bullard, Joe Milligan, Sam Smith, Alberta Schmeusser, Steve Richardson and Randy Stricklin, in their capacities as members of the School Board of the Prague Public School District I–103; and John Doe(s), Defendants.

No. CIV–92–2062–C.

United States District Court, W.D. Oklahoma.

Aug. 31, 1993.

Carolyn Gregg Hill, William D. Watts, and Michelle Johnson of the firm of Andrews, Davis, Legg, Bixler, Milsten & Price, Oklahoma City, OK, for defendants.

## MEMORANDUM OPINION AND ORDER

CAUTHRON, District Judge.

This matter is before the Court for consideration of Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment. For the reasons explained below, the motion, having been treated as a motion for summary judgment, will be granted.

At age fourteen, plaintiff, R.L.M.R., was an eighth grade student at Prague Middle School. During the fall of 1991, she became sexually involved with her basketball coach, Albert W. Thorpe ("Thorpe"). R.L.M.R. and R.L.R. and C.A.R, her parents (hereafter parent-plaintiffs) sue for (1) deprivations of liberty interests without due process by persons acting under color of state law (42 U.S.C. § 1983); (2) intentional gender discrimination (20 U.S.C. § 1681, *et seq.*, hereafter Title IX); and (3) negligence (51 Okla. Stat. §§ 151, *et seq.*, hereafter the Oklahoma Governmental Tort Claims Act). Defendants are the Prague School District, its superintendent, and members of the School Board, all in their official capacities.[1]

### Factual Background

For the purposes of this motion, defendants assert the following facts are not disputed. Plaintiffs do not challenge defendants' list of material facts except those contained in ¶¶ 13, 15, 17, and 18. The Court's discussion of the disputed facts begins on page eleven (11).

1. A sexual relationship began between R.L.M.R. and Thorpe sometime in October, 1991, and ended the night of November 25, 1991.

2. Thorpe and R.L.M.R. took care to keep their relationship a secret.

3. Thorpe thought it was against the policies of the School District to have sex with R.L.M.R.

Margaret McMorrow–Love, Joe C. Lewallen, Jr., and Stephen R. Stephens of the firm of Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, OK, for plaintiffs.

---

1. Defendant John Does have never been identified or served and are hereby dismissed.

4. Defendant Superintendent Cox took immediate action and suspended Thorpe the night he learned of Thorpe's relationship with R.L.M.R.

5. In the fall of 1988, three years before the events of this case took place, Superintendent Cox was told about a rumor that Thorpe was seeing a high school senior, Shannon Jensen.

6. When Superintendent Cox and the high school principal, Ted Gillispie, confronted Thorpe the next morning about that rumor, Thorpe told them the rumor was not true.

7. Principal Gillispie questioned Shannon Jensen who told him the rumor was not true.

8. Superintendent Cox and Principal Gillispie told Thorpe that if he had any relationship with a student other than a professional teacher-pupil relationship, he would be fired.

9. Superintendent Cox concluded there was no basis to the rumor about Thorpe and Shannon Jensen based on the fact that both parties denied the rumor and that he had not observed anything in Thorpe's demeanor or behavior to cause him to consider the rumor true.

10. In the winter of 1989, Craig Price, the boyfriend of Lesley Bullard, a high school senior, accused Thorpe of trying to date Lesley Bullard. Thorpe himself reported Price's accusation to Principal Gillispie.

11. Superintendent Cox did not learn of the Lesley Bullard rumor until four to six months later.

12. In 1989, School Board member Jack Bullard was told by his daughter, Lesley Bullard, about a conversation she had with Thorpe. Thorpe and Lesley Bullard discussed going dancing after Lesley Bullard graduated. Jack Bullard was not concerned because Lesley was a senior and he thought Thorpe was a nice young man.

13. Defendants assert that prior to November 25, 1991, none of the defendants had any knowledge of Thorpe's relationship with R.L.M.R. (disputed by plaintiffs).

14. Defendant former School Board member Milligan has not been on the School Board since January, 1990, and knew nothing

about Thorpe's conduct until after November 25, 1991.

15. Defendants assert no one complained about Thorpe's conduct to the School Board or its individual members (disputed by plaintiffs).

16. In the fall of 1988, when defendant School Board member Schmeusser heard rumors that something was going on between Thorpe and Shannon Jensen, Schmeusser told Superintendent Cox, who told Schmeusser he had already talked to Thorpe and there was no truth to the rumor.

17. Defendants assert that other than School Board member Schmeusser, prior to November 25, 1991, no one on the School Board heard any rumors about any misconduct between Thorpe and any female student (disputed by plaintiffs).

18. Defendants allege the State of Oklahoma Department of Education's Office for Civil Rights investigated this case and found "there was no evidence to indicate that sexual harassment occurred because there was no evidence that the conduct was unwelcomed [sic]" (disputed by plaintiffs).

Rather than provide, as required by Local Rule 14(B), a "concise statement of material facts as to which the [plaintiffs] contend[ ] a genuine issue exists[,]" plaintiffs have listed "material facts which preclude the entry of summary judgment." In many instances these "facts" are not facts, but arguments as to the legal effect of inferences drawn by counsel from deposition testimony. To the extent any of the "material facts" are material, they will be discussed *infra*, at p. 15.

### Plaintiffs' Claims

In plaintiffs' complaint, three theories are asserted for which plaintiffs seek in excess of $50,000 for compensatory, special, general, and punitive damages, together with attorneys' fees. In the first claim, plaintiffs allege defendants committed acts which deprived them of their liberty interests pursuant to 42 U.S.C. § 1983 without due process. The liberty interests are alleged to be R.L.M.R.'s right "to be free from sexual harassment and abuse while attending a publicly mandated

course of education." Complaint at ¶ 17. It is alleged these actions also deprived parent-plaintiffs of these same rights. Complaint at ¶ 18. The violations are claimed to be caused by defendants' "reckless indifference for the Plaintiffs' rights," failure to maintain an "appropriate system of review of sexual abuse and harassment claims," failure to "identify conduct by their employees which constitutes sexual abuse and harassment," and the lack of an adequate "system of training their employees about the law of sexual abuse and harassment in public schools." Complaint at ¶¶ 19, 20, and 21.

In the alternative second claim for relief, plaintiffs allege the school and school district violated Title IX of the Education Amendments of 1972 (20 U.S.C. §§ 1681 *et seq.*). Complaint at ¶¶ 25–29. The violations are claimed to be the unreasonable interference with R.L.M.R.'s "ability to attend public school and perform her studies and activities in a normal manner," the creation of an "intimidating, hostile, offensive and abusive school environment," and the failure to "deal with a known problem of sexual abuse and harassment." Complaint at ¶¶ 31–33. These acts are alleged to constitute intentional gender discrimination against R.L.M.R. Complaint at ¶ 35.

In the alternative third claim, plaintiffs allege they have complied with the required notice provisions and assert they have a claim compensable under the Governmental Tort Claim Act, Okla.Stat. tit. 51, §§ 151, *et seq.* The conduct alleged in this claim is that defendants knew, or should have known, of "the complaints against Thorpe relating to his attempts to have dating and/or sexual relationships with minor female students of the Prague Middle School and Prague High School." Complaint at ¶ 37. This conduct is alleged to be "sufficiently egregious that Thorpe should have been summarily dismissed because of his sexual propensity towards minor female students." *Id.* Although defendants allegedly knew, or should have known, Thorpe was incompetent as a teacher and coach, and that he had a propensity to sexually harass and abuse female students, it is alleged defendants did not "properly investigate claims against Thorpe"

and failed to "insure that [Thorpe] was competent to coach and supervise female students." Complaint at ¶¶ 38, 39. Because defendants allegedly knew, or should have known, that one in R.L.M.R.'s position "would be subjected to unreasonable risk or harm" from their employee Thorpe, plaintiffs claim these acts constitute defendants' breach of their duties to "use reasonable care in the hiring and retention of its employees" and a "failure to conduct reasonable investigations into the background and character of Thorpe." Complaint at ¶¶ 40–41. In this same alternative claim for relief, plaintiffs allege defendants are also liable under the theory of *respondeat superior.*

## Discussion
*Parent–Plaintiffs' Claims*

§ 1983

■ Parent-plaintiffs claim they "have a fundamental liberty interest in the care, custody and companionship of their children" and that defendants' conduct toward the parent-plaintiffs has "detrimentally affected" their ability to function within the community. Plaintiffs' Brief at 22 (June 7, 1993). With a broad brush, parent-plaintiffs paint a picture of their § 1983 claim and suggest defendants' deeds "constitute more than an isolated action against a family member" because defendants' acts "implicate constitutionally protected interests and it is for the jury to determine the nature and extent of the injury to those rights." *Id.* at 23.

The parent-plaintiffs allege a deprivation of "a fundamental liberty interest in the care, custody and companionship of their children" and rely on *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). They also argue that defendants' attempts to dissuade them from pursuing criminal charges against Thorpe implicate their "constitutionally protected interests." Finally, they list additional deprivations involving termination of father-plaintiff's responsibility for videotaping football games, defendants' failure to protect "R.L.M.R. from harassment by teachers," and defendants' having welcomed "Thorpe to school functions." Parent-plaintiffs claim these events have "detrimentally affected [their] ability to function within the

community." Plaintiffs' Brief at 22–23 (June 7, 1993) (citations omitted). *See also* pp. 22–23 ("These deprivations have obstructed the parents' right to determine the course of their child's upbringing. The parents have a cause of action pursuant to Section 1983.").

Parent-plaintiffs' constitutional right to the care, custody and companionship of their child cannot succeed because they have not lost physical custody, nor has a severe and permanent injury rendered the relationship meaningless. *Sipka v. Soet,* 761 F.Supp. 761, 766 (D.Kan.1991); *Hutson by Hutson v. Bell,* 702 F.Supp. 212, 214 (N.D.Ill.1988); *Doe "A" v. Special Sch. Dist. of St. Louis County,* 637 F.Supp. 1138, 1146 (E.D.Mo.1986), *affirmed,* 901 F.2d 642 (8th Cir.1990). The deprivation of a familial association will not support a claim for relief, as there is no showing that Thorpe acted as he did with the intention and knowledge that the familial relationship would be adversely affected. *Griffin v. Strong,* 983 F.2d 1544, 1548 (10th Cir.1993). Finally, parent-plaintiffs' claim that the conduct of the defendant School Board members has detrimentally affected their ability to function within the community is not supported by any fact or law which would allow this Court to conclude that a constitutional violation had been alleged or that causation was even remotely present.

## Title IX

█ On pp. 18–21 of plaintiffs' June 7, 1993, brief, plaintiffs discuss their Title IX claim, making no distinction between the claim of R.L.M.R. and that of the parent-plaintiffs. The relevant provision of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any educational program or activity receiving federal financial assistance. . . .

Non-students have no claim under Title IX. *See Romeo Community Schools v. U.S. Dept. of Health, Educ., and Welfare,* 600 F.2d 581 (6th Cir.), *cert. denied,* 444 U.S. 972, 100 S.Ct. 467, 62 L.Ed.2d 388 (1979) (parent-plaintiffs are not students involved in federally-assisted program).

Accordingly, defendants are entitled to summary judgment on the Title IX claim made by parent-plaintiffs on their own behalf.

## Oklahoma Governmental Tort Claims Act

In the complaint, plaintiffs' third claim is for negligence under 51 Okla.Stat. §§ 151–171, the Oklahoma Governmental Tort Claims Act.

Defendants contend the parent-plaintiffs were not "involved in the accident or occurrence," and therefore have no separate right of recovery. Plaintiffs respond "[t]his legal issue need not be decided before this case is submitted to the jury." Plaintiffs Brief at 24 (June 7, 1993). Of course, this argument is not enough to preclude summary judgment if defendants otherwise show a factual and legal right to judgment.

█ A party resisting a motion for summary judgment must do more than make conclusionary allegations, he "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Dart Industries, Inc. v. Plunkett Co.,* 704 F.2d 496, 498 (10th Cir.1983); *see Lake Hefner Open Space Alliance v. Dole,* 871 F.2d 943, 946 (10th Cir.1989) (plaintiff did not "by affidavits or . . . otherwise . . . set forth *specific* facts showing that there is a genuine issue for trial." (emphasis supplied)). The mission of the summary judgment procedure is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Advisory Committee Note to Fed. R.Civ.P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine issue for trial'," and summary judgment can be granted. *Id.,* 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted). The burden on the moving party is only to point out that the records do not disclose a genuine issue on any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). It is sufficient to discharge the moving party's burden by showing the record does not contain a mate-

rial issue and point out the part of the record supporting the assertion. Where, as here, the non-moving party has the burden of proving at trial the material issues, then the moving party is not required to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*, 477 U.S. at 323, 106 S.Ct. at 2553. It is enough to show "that there is an absence of evidence to support the nonmoving party's case." *Id.*, 477 U.S. at 325, 106 S.Ct. at 2553.

█ In this case, given the types of damages allegedly suffered by parent-plaintiffs, as described in discussing their § 1983 claim, the Court finds no evidence of causation. More importantly, for the reasons stated in discussing R.L.M.R.'s right to recovery under this statute, defendants are entitled to summary judgment on plaintiffs' negligence claim whether parent-plaintiffs' claim is independent or derivative.

*R.L.M.R.'s Claims*

§ 1983

█ *Doe v. Taylor Independent School Dist.*, 975 F.2d 137, 144 (5th Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1066, 122 L.Ed.2d 371, *reh. granted*, 987 F.2d 231 (1993), sets out four requirements to prove deprivation of a constitutionally protected right. Those elements are:

1. that the school officials "[r]eceived notice of a pattern of unconstitutional acts committed by subordinates;"

2. that the school officials "[d]emonstrated deliberate indifference to or tacit authorization of the offensive acts;"

3. that the school officials "[f]ailed to take sufficient remedial action; and

4. [t]hat such failure proximately caused injury to [Jane Doe].

*Id.* at 144, quoting *Doe "A"*, 901 F.2d at 645. It is on these elements that defendants' list of material facts show defendants' entitlement to judgment as a matter of law.

In defendants' material fact no. 13, they assert that prior to November 25, 1991, none of the defendants had any knowledge of Thorpe's relationship with this plaintiff. In fact no. 15, defendants assert that no one

complained about Thorpe's conduct to the School Board or its individual members, and in no. 17, that other than Schmeusser, no one on the School Board had even heard any rumors about misconduct between Thorpe and any female student. As indicated earlier, plaintiffs alleged there are disputes regarding these facts and their own list of material facts precluding summary judgment also relates to these facts. Construing the evidence in a light most favorable to plaintiffs, as the Court must do in evaluating summary judgment evidence, the following discussion of cited depositions and other evidence in support of the respective parties' versions of the facts shows that there is no evidence offered by plaintiffs to raise a doubt regarding the "disputed" facts.

Plaintiffs urge that the middle school principal Jackie Hargrove and the high school principal Ted Gillispie both had knowledge that Thorpe was intimately involved with the plaintiff. Neither is a party to this action, and there is no evidence supporting an inference that either principal had any knowledge of Thorpe's relationship with R.L.M.R. before November 22, 1991. On that Friday, R.L.M.R. and three others reported to Hargrove another student's attempts to blackmail R.L.M.R. concerning her sexual involvement with Thorpe. R.L.M.R. explained to the middle school principal that this was a rumor which may have been originated by someone who observed her on the previous day. Shortly after R.L.M.R. relayed this information to Hargrove, Hargrove approached Thorpe to relate the conversation. Although Hargrove has testified she talked to Gillispie about how to handle the blackmail, this conversation is not confirmed by Gillispie in his deposition. Assuming, however, that Hargrove did tell Gillispie, it could not have been before November 22, 1991, the date she was told this information. The Court concludes that plaintiffs have adduced no evidence in contradiction of defendants' material fact no. 13, that is none of the *defendants* had any knowledge of Thorpe's relationship with R.L.M.R. before November 25, 1991. The only provable knowledge is that of middle school Principal Hargrove, three days earlier and perhaps high school

Principal Gillispie as well. Neither of these individuals are defendants.

The next topic of some discussion is whether anyone complained about Thorpe's conduct to the School Board or its individual members or whether School Board members heard any rumors about misconduct (Defendants' Material Facts 13 and 17). Much of plaintiffs' list of "material facts which preclude summary judgment" goes to the knowledge, whether by rumor or otherwise, of the School Board that Thorpe had engaged in misconduct with other female students, thereby putting the Board on notice to enact policies, take precautionary measures, or otherwise protect female students from Thorpe. To adequately describe the positions of the parties and the evidence of record requires tabulating the vaguest rumors and tracing the source of so-called "knowledge." This the Court must do for purposes of determining whether any fact is in dispute. For sake of clarity, the Court will treat knowledge and rumors of the School Board as they relate to two separate incidents, an involvement of Thorpe with Shannon Jensen, a high school senior, in the fall of 1989, and Thorpe's involvement with a different high school senior, Lesley Bullard, in the winter of 1989. Insofar as the facts relating to Thorpe's involvement with these two female students, defendants' list of material facts accurately characterizes the facts of the relationships. The critical inquiry here, however, is the knowledge of the School Board members regarding those incidents.

First, regarding Shannon Jensen, the undisputed facts set out the knowledge and action of Superintendent Cox regarding his knowledge and reaction to this information. Regarding the School Board members, only defendant Schmeusser was told about the rumor of Thorpe and Shannon Jensen and she was immediately reassured by Superintendent Cox, of whom she inquired, that he had investigated and there was no truth to the rumor. Loretta Gray, a local hairdresser, also testified she had told Coach Burnett about the rumor. Both Coach Burnett and School Board member Schmeusser told Gray the matter would be investigated. With respect to Craig Price, the then-boyfriend of

Lesley Bullard who will be discussed hereafter, his testimony was that he knew Thorpe dated Shannon Jensen because he saw them in Stroud. He could not recall exactly when and he never told anybody on the School Board or the school administration about his knowledge (Price Deposition p. 24, ll. 11–14). While Price stated he believed his companion had told the School Board or school administration, he does not know why he thinks so (Id., ll. 11–21). Thus, while plaintiffs make many broad allegations concerning knowledge on the part of the School Board members, none is supported by the evidence cited, except that Schmeusser was told by Gray.

Regarding Lesley Bullard, as indicated by the material facts, the only evidence that such a relationship ever existed came from Craig Price, Lesley Bullard's boyfriend at the time. Lesley Bullard herself has denied that Thorpe ever mentioned something to her about going out or that she and Thorpe exchanged notes. Price, on the other hand, testifies concerning what is referred to as an "ice-scraping incident" where Price observed Thorpe and Lesley Bullard scraping ice from the windshield of Lesley Bullard's car. Price recalls telling his father about the incident but not anyone else. According to Price, Lesley Bullard told him that Thorpe had said something to her about going out. Further, Price told defendant Jack Bullard (Lesley Bullard's father, who is also a School Board member defendant herein) about the incident. That Price told Jack Bullard is not disputed. Although Price testified other teachers and coaches knew of the ice-scraping incident, he did not tell them. However, school teacher Kline and Coach Burnett may have observed this incident. Plaintiffs offer Oklahoma State Bureau of Investigation (OSBI) notes regarding a statement made by a child's parent, Johnnie Loftin. The OSBI investigator notes Loftin said she spoke with Gillispie and related to Gillispie what Loftin had been told by Loftin's daughter, Misty Lee. This conversation concerned the claim that Thorpe and Shannon Jensen were having an affair. It does not appear that there is any exception to the hearsay rule which would make this statement admissible, but in any event Superintendent Cox is not a member of the School Board and this provides no

evidentiary support for the knowledge of the School Board members.

Once the moving party points out the absence of evidence to create a "genuine issue" of a "material fact" on which the non-moving party bears the burden of proof at trial, the Supreme Court imposes a burden on the non-moving party. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355. The non-moving party must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510.

Thus, for all of plaintiffs' sweeping generalizations regarding the knowledge of School Board members about other incidents, the evidence shows that School Board member Schmeusser was told of the rumor of the relationship between Thorpe and Shannon Jensen, questioned Superintendent Cox and was told the matter had been handled. Defendant School Board member Bullard knew that Thorpe had made some comment about taking his daughter dancing, but did not think it to be a threat or anything serious. At that time, he thought Thorpe was a nice young man. Superintendent Cox spoke to both Thorpe and Shannon Jensen as soon as he heard about a relationship between them. He warned Thorpe that such conduct could result in termination, and both Thorpe and Jensen assured him the rumor was not true. Thorpe himself reported the Lesley Bullard rumor to Principal Gillispie because of threats made by Lesley Bullard's boyfriend. There is absolutely no evidence of any relationship between Thorpe and Lesley Bullard except the testimony of Craig Price, her then-boyfriend. Even crediting his testimony completely, there is no evidence of more than one incident involving conversation only or that any defendant was aware of even that incident.

Finally, the only knowledge of any defendant as to Thorpe's relationship with R.L.M.R. came on Friday, November 22, and Thorpe was confronted and fired on November 25.

As mentioned earlier, it is difficult in this case to separate evidence from innuendo, substance from smokescreen. Plaintiffs' list of "material facts which preclude summary judgment" contain many completely irrelevant facts and others that are completely unsupported by the record. For example, plaintiffs assert that Thorpe received favorable performance reviews despite his use of poor grammar. They urge that his invocation of the Fifth Amendment when asked about other students prevents the entry of summary judgment. As to these factual allegations and many others, with the exception of the facts discussed above, the Court finds plaintiffs' list of material facts to be immaterial to the decision in this case. Returning to the list of required factors announced in *Jane Doe v. Taylor Indep. School Dist.*, 975 F.2d at 144, the Court finds the undisputed facts show none of the necessary factors exist and defendants are entitled to judgment as a matter of law.

In what may be a separate theory for relief under § 1983, plaintiffs argue that school authorities established and maintained a policy, practice or custom which caused the injury to R.L.M.R. *See generally Maldonado v. Josey*, 975 F.2d 727 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993) (complaint alleged teacher's failure to supervise students resulted in child's death); *J.O. v. Alton Community Unit School Dist. 11*, 909 F.2d 267 (7th Cir. 1990) (complaint against school defendants alleged civil rights violation as a result of teacher's sexual molestation of student). Most recently, the Tenth Circuit has refined the requirements of proof in *Gates v. Unified School District No. 449*, 996 F.2d 1035 (10th Cir.1993) where the requirements of establishing a case based on custom were set out as follows:

(1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the school district's employees;

(2) Deliberate indifference to or tacit approval of such misconduct by the school

district's policymaking officials (board) after notice to the officials of that particular misconduct; and

(3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the board's custom and that the custom was the moving force behind the unconstitutional acts.

*Id.* at 1041.

Again, defendants have shown that, based upon undisputed facts, none of the three requirements is present, and they are entitled to judgment as a matter of law.

**Title IX**

■ The Title IX allegations in the complaint are for interference with R.L.M.R.'s "ability to attend public school and perform her studies and activities in a normal manner," the creation of an "intimidating, hostile, offensive and abusive school environment," and the failure to "deal with a known problem of sexual abuse and harassment." Complaint at ¶¶ 31–33. Plaintiffs allege defendants "intentionally discriminated against R.L.M.R. on account of her gender." Complaint ¶ 35.

To prevail, R.L.M.R. "must prove that defendants acted with the intent to discriminate against her on account of gender in a federally funded program." *Guardians Ass'n v. Civil Service Com'n of City of New York,* 463 U.S. 582, n. 27, 103 S.Ct. 3221, n. 27, 77 L.Ed.2d 866 (1983). No party disputes that R.L.M.R. was willingly involved with Thorpe and Thorpe's sexual advances were not unwelcome. Defendants urge the conclusion that plaintiffs fail to establish a claim under Title IX, citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 68, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986) ("gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'"). *Meritor Savings Bank* was a Title VII case involving adults. At least one court has refused to apply Title VII standards to a Title IX case. *Chance v. Rice University,* 984 F.2d 151, 153 (5th Cir.1993).

Plaintiffs respond proof of discriminatory *effect,* and not proof of discriminatory *intent,* may be sufficient as the proper standard is an unsettled issue. *See Pfeiffer v. School Bd. for Marion Center Area,* 917 F.2d 779, 788

(3rd Cir.1990). Despite plaintiffs' argument that Oklahoma's statutory rape law precludes her consent to Thorpe's advances, the Court finds that the criminality of Thorpe's actions, standing alone, have no bearing on the School Board's liability. Coercion into sexual relations gives rise to a private right of action under Title IX, *Franklin v. Gwinnett County Public Schools,* —— U.S. ——, ——, 112 S.Ct. 1028, 1037, 117 L.Ed.2d 208 (1992), but discriminatory intent must still be shown. *Guardian's Ass'n,* 463 U.S. at 607. Plaintiffs have failed to come forward with any facts showing the custom or policy, acquiescence in, conscious disregard of, or failure to investigate or discipline on the part of the School District or any named defendant. Therefore, the question of intent is really moot as the proof fails before that question is reached. Accordingly, defendants are entitled to summary judgment on R.L.M.R.'s claim under Title IX.

**Oklahoma Governmental Tort Claims Act Claim**

■ Defendants argue Thorpe's action were outside the scope of his employment and seek a decision in their favor on Count Three. The pertinent portion of the Oklahoma Governmental Tort Claims Act, 51 Okla.Stat. § 153, provides:

> The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment.... The state or a political subdivision shall not be liable under the provisions of this act for any act or omission of an employee acting outside the scope of his employment.

Plaintiffs argue that defendants' failure to "properly supervise, control and reprimand Thorpe, which failures lead to his rape of R.L.M.R.," entitles them to relief. Plaintiffs' Brief at 24 (June 7, 1993).

Having resolved the federal claims, the Court could decline to exercise its jurisdiction over this state claim. 28 U.S.C. § 1367(c)(3). However, there are adequate facts in the record to determine this issue. The standards for summary judgment require a decision on an issue if the evidence is so weak it does not warrant presentation at trial. Plaintiffs' state claim is one of those issues. Despite defendants' showing to the

contrary, plaintiffs have come forward with no evidence from which a rational trier of fact could conclude that defendants' actions were sufficiently ineffective so as to "lead to [Thorpe's] rape of R.L.M.R." As noted above in the fact section, and analyzed in connection with plaintiffs' § 1983 claims, before the relationship between Thorpe and R.L.M.R., defendants adequately reacted to each piece of information they received. They investigated the rumors and questioned the alleged participants. Defendants kept watch over the situation to determine if there were any new developments. They employed standard and acceptable practices in hiring and evaluating Thorpe. From this evidence, and the facts adduced herein, it would not be possible to conclude that defendants were negligent or that such negligence "lead to [Thorpe's] rape of R.L.M.R." Accordingly, the Court finds plaintiffs are not entitled to recover on this claim and that defendants are entitled to summary judgment on this issue.

## CONCLUSION

In accordance with the foregoing, it is ORDERED that defendants' motion for summary judgment is granted, and all defendants are entitled to judgment as a matter of law against all plaintiffs on all claims. A judgment shall enter accordingly.

IT IS SO ORDERED.