917 F.Supp. 1423 (1996)
Shelly M. BOLON, Plaintiff,
v.
ROLLA PUBLIC SCHOOLS, et al., Defendants.
No. 4:93CV2034 CDP.
United States District Court, E.D. Missouri, Eastern Division.
January 5, 1996.
Memorandum Certifying Decision for Interlocutory Appeal March 6, 1996.
*1424 *1425 *1426 David C. Howard, St. Louis, MO, for Shelly M. Bolon.
Robert J. Krehbiel, Evans and Dixon, St. Louis, MO, Thomas A. Mickes, Peter H. Ruger, Celynda L. Brasher, Peper and Martin, St. Louis, MO, for Rolla Public Schools, Robert McKay, D. Kent King, Roger Berkbuegler.
Howard B. Becker, Dan L. Birdsong, Thomas and Birdsong, Rolla, MO, for Daniel P. Heitert.

MEMORANDUM AND ORDER
PERRY, District Judge.
This matter is before the Court on defendants' motion for summary judgment.
Plaintiff originally brought this action against the Rolla Public Schools, Daniel P. Heitert, a teacher in the Rolla Public Schools, Robert McKay, a member of the Board of Education of the Rolla Public Schools, D. Kent King, Superintendent of the Rolla Public Schools, and Roger Berkbuegler, Principal of Rolla Senior High School. The action arises from the alleged sexual misconduct of defendant Heitert toward plaintiff when she was a student at Rolla Senior High School. Plaintiff has reached a settlement with defendant Heitert, and has now dismissed all her claims against that defendant.
All remaining defendants have moved for summary judgment on the remaining counts, Counts IV, V, and X. Count IV alleges that defendant Rolla Public Schools subjected plaintiff to intentional discrimination on the basis of sex in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq. Count V alleges that defendants McKay, King and Berkbuegler deprived plaintiff of an education free of sex discrimination and subjected her to a loss of privacy in violation of the Ninth and Fourteenth Amendments to the United States Constitution.[1] Count X, a state-law negligence claim, alleges that defendants McKay, King and Berkbuegler failed to provide a reasonably safe environment.
Defendants contend that they are entitled to judgment as a matter of law because (1) any alleged injury that plaintiff suffered is beyond the scope of Title IX, (2) plaintiff has not demonstrated that defendants had notice of her relationship with defendant Heitert or that once it was brought to their attention, defendants displayed deliberate indifference, and (3) defendants McKay, King and Berkbuegler were acting as public officials and, therefore, are immune from liability on plaintiff's negligence claim. The parties have extensively briefed the issues raised by the motion and have filed evidence, including affidavits and deposition testimony, in support of their positions.
In determining whether summary judgment should issue, the facts and inferences from these facts are viewed in the light most *1427 favorable to the non-moving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, however, the non-moving party may not rest on the allegations in its pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e).

1. Count IV (Title IX)

The sexual misconduct by defendant Heitert occurred during the 1987-88 school year, at which time plaintiff was a sixteen-year-old junior at Rolla Senior High School. Heitert was a teacher and football coach at the high school. Heitert initiated sexual contact with plaintiff, who was a student in his class, in October 1987. The sexual relationship between Heitert and plaintiff continued until February 1988, when plaintiff's parents learned of the relationship and informed school officials. During the sexual relationship, Heitert told plaintiff she did not have to worry about her grade in his class. Sexual and other contact between the two occurred both at and away from the school.
Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, reads in pertinent part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court in Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), established that a school district, as a recipient of federal funds, can be liable for monetary damages under Title IX to the victim of intentional discrimination. The Supreme Court implicitly acknowledged that sexual harassment includes coercive sexual activity between a male high school teacher and a female student and implicitly accepted such behavior as sex discrimination prohibited by Title IX. Id.
The standard of a school district's liability for sexual harassment by teachers against students under Title IX is not clear. Courts have adopted several different approaches, including the following: (1) the agency principles contained in the Restatement (Second) of Agency § 219(2)(b) (essentially a "negligent or reckless" standard), see Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co., 900 F.Supp. 844 (W.D.Tex.1995); Rosa H. v. San Elizario Indep. Sch. Dist., 887 F.Supp. 140 (W.D.Tex.1995); (2) knowledge or direct involvement by the school district, see Howard v. Board of Educ., 876 F.Supp. 959 (N.D.Ill.1995) (involving sexual harassment of an employee rather than a student); Letlow v. Evans, 857 F.Supp. 676 (W.D.Mo.1994); Floyd v. Waiters, 831 F.Supp. 867 (M.D.Ga.1993); R.L.R. v. Prague Pub. Sch. Dist. I-103, 838 F.Supp. 1526 (W.D.Okla.1993); (3) the Title VII standards of employer liability in sexual harassment cases (i.e., "knew or should have known" for hostile environment and strict liability for quid pro quo harassment), see Murray v. New York Univ. College of Dentistry, 57 F.3d 243 (2d Cir.1995); Kadiki v. Virginia Commonwealth Univ., 892 F.Supp. 746 (E.D.Va.1995); Hastings v. Hancock, 842 F.Supp. 1315 (D.Kan.1993); Patricia H. v. Berkeley Unified Sch. Dist., 830 F.Supp. 1288 (N.D.Cal.1993); and (4) strict liability, see Leija v. Canutillo Indep. Sch. Dist., 887 F.Supp. 947 (W.D.Tex.1995).
This Court, guided by the Supreme Court's Franklin decision interpreting Title IX, holds that intentional discrimination by teachers is imputed to the school district under the principles of respondeat superior, regardless of whether the intentional discrimination is the creation of a hostile environment, the demand for sexual favors, the removal of females from the classroom, or *1428 any other intentional discrimination based on sex in violation of Title IX.[2]
Franklin involved the alleged sexual harassment of a student (including coerced sexual intercourse) by a teacher at her high school. Although the Court did not directly address the issue of the school district's liability for the intentional acts of its teacher, the following passage regarding the intent requirement is indicative of the Court's approach to the liability issue:
The point of not permitting monetary damages for an unintentional violation is that the receiving entity of federal funds lacks notice that it will be liable for a monetary award. See id. [Pennhurst State School & Hospital v. Halderman, 451 U.S. 1] at 17, 101 S.Ct. [1531] at 1540 [67 L.Ed.2d 694] [(1981)]. This notice problem does not arise in a case such as this, in which intentional discrimination is alleged. Unquestionably, Title IX placed on the Gwinnett County Schools the duty not to discriminate on the basis of sex, and "when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor `discriminate[s]' on the basis of sex." Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). We believe the same rule should apply when a teacher sexually harasses and abuses a student. Congress surely did not intend for federal monies to be expended to support the intentional actions it sought by statute to proscribe.
Franklin, 503 U.S. at 74-75, 112 S.Ct. at 1037. This passage indicates that the Supreme Court would impose liability against a school district that accepts federal funds for the intentional discrimination by an agent, regardless of whether the district "knew or should have known" about the discrimination. To date, at least two federal courts have interpreted the Franklin language to imply this "strict liability" standard. Leija v. Canutillo Indep. Sch. Dist., 887 F.Supp. 947, 953 (W.D.Tex.1995) (involving sexual abuse of student by teacher); Doe v. Petaluma City Sch. Dist., 830 F.Supp. 1560, 1574-75 (N.D.Cal.1993) (involving sexual harassment by peers), rev'd on other grounds, 54 F.3d 1447 (9th Cir.1995).
There are several compelling reasons to impute the intentional actions of teachers to the school district under Title IX, even beyond the Supreme Court's implied adoption of strict liability in Franklin. In determining the standard of liability, it should be noted that the Supreme Court has afforded Title IX "a sweep as broad as its language." North Haven Bd. of Educ. v. Bell, 456 U.S. 512, 521, 102 S.Ct. 1912, 1918, 72 L.Ed.2d 299, 308 (1982) (quoting United States v. Price, 383 U.S. 787, 801, 86 S.Ct. 1152, 1160, 16 L.Ed.2d 267 (1966)). Unlike employers, school districts make express assurances to prohibit sex discrimination in exchange for the acceptance of federal funds. See 34 C.F.R. § 106.4 (1994). In addition, the fact that students are required to attend certain levels of school places a high duty on public school districts to protect the interests of the children. For these and other reasons, the Court agrees that "the risk of harm is better placed on a school district than on a young student." Leija, 887 F.Supp. at 955.
Another reason to hold schools strictly liable for sexual misconduct by teachers is that it is illogical to adopt different standards of school liability for different forms of intentional sex discrimination by teachers, as would be required by a strict adherence to the Title VII standards. Refusal to teach females and sexual harassment of students are both sex discrimination in violation of Title IX, and there is no reason to adopt separate standards of liability.
Justice Marshall addressed this issue in his concurring opinion in Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986):
A supervisor's responsibilities do not begin and end with the power to hire, fire, and discipline employees, or with the power to recommend such actions. Rather, a supervisor is charged with the day-to-day supervision of the work environment and with ensuring a safe, productive workplace. *1429 There is no reason why abuse of the latter authority should have different consequences than abuse of the former. In both cases it is the authority vested in the supervisor by the employer that enables him to commit the wrong: it is precisely because the supervisor is understood to be clothed with the employer's authority that he is able to impose unwelcome sexual conduct on subordinates. There is therefore no justification for a special rule, to be applied only in "hostile environment" cases, that sexual harassment does not create employer liability until the employee suffering the discrimination notifies other supervisors. No such requirement appears in the statute, and no such requirement can coherently be drawn from the law of agency.
Id. at 76-77, 106 S.Ct. at 2410. Justice Marshall's argument regarding Title VII standards of employer liability is even more convincing in Title IX cases involving teachers and students because of the extreme and inherent inequities in age and power. Regardless of whether teachers refuse to teach female students or sexually harass students, such teachers use the authority vested in them by the school to further their illegal conduct.
If Title IX is to have any effect, school districts must be held strictly liable for the actions of a teacher who engaged in blatant sex discrimination, for example, requiring all females to sit in the hall during class. Otherwise, the school would be effectively insulated from all Title IX liability. In general, school boards will not vote to deny education to all females. Absent such extreme conduct, the administration of a school could shield itself from liability by arguing that it did not know the teacher was refusing to teach females. In this respect, a knowledge requirement would frustrate the goals of Title IX. In light of the Supreme Court's holding in Franklin that sexual harassment constitutes intentional sex discrimination in violation of Title IX, there is simply no reason to apply a different standard of liability when a teacher discriminates by engaging in a sexual relationship with a student rather than by denying him or her an education.[3]
In addition to the foregoing, there are several problems that render the "knew or should have known" standard particularly unworkable in the present context involving sexual misconduct by teachers. By its very nature, sexual misconduct by teachers toward students will almost always occur secretly, making it very difficult for school officials to know. Further, such a standard could tempt school officials to close their eyes to the problem, with hopes that shielding themselves from knowledge will also shield them from liability. Finally, determining what and when a school district "knows" under the "knew or should have known" standard is extremely difficult. As stated in Leija, "Where does the line get drawn: at the teacher, at the principal, at the superintendent, or at the Board?" Leija v. Canutillo Indep. Sch. Dist., 887 F.Supp. 947, 954 (W.D.Tex.1995). Courts that refuse to impute intentional sex discrimination by a school's agents to the school district must make an inherently arbitrary decision as to whose knowledge is sufficient to hold the school district liable.
Based on the foregoing, this Court rejects the standards of employer liability for sexual discrimination that have evolved under Title VII and concludes that school districts are liable for monetary damages under Title IX when a teacher or other agent of the school district intentionally discriminates against a student on the basis of sex. Applying this standard to this case, it is clear that questions remain to be determined by the factfinder, and defendants' motion for summary judgment on Count IV of the complaint will be denied.

*1430 2. Count V (Section 1983)

In Count V, plaintiff contends that the individual defendants deprived her of an education free from sex discrimination and subjected her to loss of privacy in violation of the Ninth and Fourteenth Amendments. Because the undisputed facts show that the individual defendants lacked knowledge of Heitert's sexual misconduct and took remedial action upon receiving notice, plaintiff's § 1983 claim must proceed under a "failure to train" theory as established in City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989).
The Court in City of Canton adopted a "deliberate indifference" standard for failure to train cases. Id. at 388, 109 S.Ct. at 1204. To establish that the individual defendants exhibited deliberate indifference by their failure to train, plaintiff must first prove that the defendants "had notice that [their] procedures were inadequate and likely to result in a violation of constitutional rights." Id. at 389, 109 S.Ct. at 1205. See also Thelma D. v. Board of Educ., 934 F.2d 929, 934 (8th Cir.1991).
Notice of inadequate procedures can be established in one of two ways. First, notice can be implied where failure to train employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious. Thelma D., 934 F.2d at 934. Second, even where the need for training is not obvious at the outset, a pattern of constitutional violations can place defendants on notice of the need to train. Id.
The latter is not applicable in this case because the individual defendants did not have actual knowledge of Heitert's actions until February 1988, at which time they took action against Heitert. Likewise, the parties have not submitted any admissible evidence that these defendants had actual knowledge of constitutional violations by individuals other than Heitert that would have put them on notice of the need to train. The individual defendants were not aware of Heitert's alleged sexual misconduct until plaintiff notified them of it in February 1988. Defendant Berkbuegler, Principal of Rolla Senior High School, and defendant King both testified (by affidavit) that they first learned of allegations that Heitert had been sexually involved with any student at the school in February 1988. Plaintiff testified that she had not reported Heitert's conduct to any teacher or employee prior to February 1988.
Plaintiff submitted the affidavit of Mary Jane Denney in which Ms. Denney states that she had a sexual relationship with Heitert when she was a student at Rolla High School. This relationship included sexual intercourse on school premises. Plaintiff also submitted the affidavit of Debra Lee in which Ms. Lee attests that she had a sexual relationship with Heitert. Additionally, Ms. Lee stated that Heitert told her that Superintendent King had asked him if he was having an affair with Ms. Lee and that he denied any involvement with her.
These affidavits do not give rise to any genuine issue regarding whether defendants had knowledge of Heitert's alleged sexual misconduct. Neither Ms. Denney nor Ms. Lee notified any of the individual defendants of Heitert's actions, and no reasonable inference may be drawn from the evidence presented that defendants had such knowledge. Ms. Lee's statement that Heitert stated that defendant King asked him about her affair is inadmissible hearsay. Hearsay evidence and evidence not based on personal knowledge may not defeat a summary judgment. Firemen's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir.1993), aff'd on other grounds, 63 F.3d 754 (8th Cir.1995).
Although defendants did not have actual notice of a pattern of constitutional violations, the Court finds that defendants had "implied notice" that failure to train would likely result in the violation of constitutional rights.[4] To find implied notice of the need to train, the Court must first determine that the *1431 constitutional rights asserted by plaintiff existed at the time of defendants' alleged inaction. Plaintiff's § 1983 claim is based on the violation of her constitutional rights to privacy, due process and equal protection.[5] Therefore, the issue is whether defendants could have known at the time of the incident that plaintiff and other students possessed constitutional rights that were at risk of being violated absent training.
As the Supreme Court has decided in the qualified immunity context, the existence of clearly-established constitutional rights is an issue of law for courts to determine. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Court finds that the contours of a student's constitutional right to be free from sexual abuse and other violations of bodily integrity were well established by 1987-88. See, e.g., Doe v. Petaluma City Sch. Dist., 54 F.3d 1447, 1451 (9th Cir.1995); In re Philadelphia Litigation, 49 F.3d 945, 972 (3d Cir.), cert. denied sub nom. Africa v. City of Philadelphia, ___ U.S. ___, 116 S.Ct. 176, 133 L.Ed.2d 116 (1995); Doe v. Taylor Indep. Sch. Dist, 15 F.3d 443, 455 (5th Cir.) (en banc), cert. denied sub nom. Lankford v. Doe, ___ U.S. ___, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994); Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726-27 (3d Cir.1989), cert. denied sub nom. Smith v. Stoneking, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990); C.M. v. Southeast Delco Sch. Dist., 828 F.Supp. 1179, 1190-91 (E.D.Pa.1993) (all qualified immunity cases). In light of the clear constitutional rights of students to be free from sexual abuse, and the potentially disastrous consequences of a violation of those rights, the Court finds that the need to train was patently obvious and should be implied.
At trial, plaintiff must establish the inadequacy of defendants' training. In City of Canton, which involved the failure to provide medical attention to plaintiff while in police custody, the Supreme Court stated: "[T]he focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." City of Canton, 489 U.S. at 390, 109 S.Ct. at 1206. In this case, the evidence submitted by defendants includes an excerpt from the Rolla Senior High School student handbook and three articles: "teacher guidelines for avoiding personal liability," "educator liability and how to stay out of trouble," and "the teacher's ten commandments." The adequacy of the policies and other training implemented by defendants regarding the constitutional rights of students in light of the tasks performed by teachers remains an issue of fact to be determined by the jury in this case.
Finally, to hold defendants liable for failure to train, plaintiff must also prove causation, i.e., "that the deficiency in training actually caused" the injury. City of Canton, 489 U.S. at 391, 109 S.Ct. at 1206. Causation is also an issue of fact on which disputes remain, and must be determined by the jury. Therefore, defendants' motion for summary judgment as to Count V of the complaint will be denied.

3. Count X (Supplemental State Negligence Claim)

In Count X, plaintiff alleges that the individual defendants failed to supervise, monitor and investigate allegations regarding prior sexual misconduct by Heitert and failed to take actions to prevent injury to plaintiff. Defendants Berkbuegler, King and McKay contend that they are immune from suit on this state negligence claim under the doctrine of official immunity because of their roles as principal, superintendent and member of the school board, respectively.
Under Missouri's official immunity doctrine, "[P]ublic officers acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions, but they may be held liable for torts committed when acting in a ministerial capacity." Kanagawa v. State, 685 S.W.2d 831, 835 (Mo.1985) (en banc). The threshold requirement for the application of the doctrine of official immunity is that the person *1432 invoking the doctrine be a public official. Webb v. Reisel, 858 S.W.2d 767, 769 (Mo.Ct. App.1993).[6] "Public official" is defined as follows:
A public office is the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law of enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is the public officer. That portion of the sovereign's power delegated to the officer must be exercised independently, with some continuity and without control of a superior power other than the law.
State ex rel. Eli Lilly & Co. v. Gaertner, 619 S.W.2d 761, 764 (Mo.Ct.App.1981) (citations omitted).
To support her rejection of the official immunity doctrine in this case, plaintiff relies on Jackson v. Roberts, 774 S.W.2d 860 (Mo.Ct.App.1989), which held that teachers and assistant principals are not public officials, and are therefore not immune from negligence liability under the official immunity doctrine. In Jackson, the court concluded that the Missouri Supreme Court did not intend to grant teachers, principals or superintendents any immunity from liability for negligence. Id. at 861 (citing Lehmen v. Wansing, 624 S.W.2d 1 (Mo.1981) (en banc); Spearman v. Univ. City Public Sch. Dist., 617 S.W.2d 68 (Mo.1981) (en banc)). This Court agrees that the Missouri Supreme Court has refused to grant immunity to superintendents and principals for their negligent acts, and is bound by that holding.
However, Missouri law is not as clear with respect to school board members, whom this Court finds are distinguishable from teachers, superintendents and principals such that school board members qualify as "public officials." The case cited by defendants, Webb v. Reisel, 858 S.W.2d 767 (Mo.Ct.App.1993), supports this distinction. To qualify as a public official, an individual must exercise his or her power "independently, with some continuity and without control of a superior power other than the law." Gaertner, 619 S.W.2d at 764. As noted in Webb, "The superintendent of a school district is subject to the control of the school board ..." Webb, 858 S.W.2d at 769. Principals and teachers are similarly subject to the control of the school board. On the other hand, Missouri law has granted school boards "general and supervising control, government and management of the public schools ..." Id. This degree of control renders members of school boards "public officials" for official immunity purposes.
Because defendant McKay, as a member of the Rolla Public Schools Board of Education, is a public official under Missouri law, he is entitled to qualified immunity if the conduct in question constituted a "discretionary" rather than "ministerial" act. Rustici v. Weidemeyer, 673 S.W.2d 762, 768-69 (Mo. 1984) (en banc). A discretionary act requires "the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." Id. at 769. A ministerial act is "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." Id.
Count X alleges defendants' failure to maintain a reasonably safe environment for students, including the failure to "provide or perform the supervision, monitoring, evaluation, inquiry and investigation which would have revealed defendant Heitert's prior sexual offenses upon students at Rolla Senior High School and would have provided notice to them of defendant Heitert's misconduct perpetrated against plaintiff." This alleged *1433 negligent conduct requires the exercise of judgment sufficient to remove it from the category of "ministerial acts." School board members are not bound by any legal authority to procedures for hiring and investigating the backgrounds of teachers, or for maintaining a reasonably safe environment. These activities require an independent exercise of judgment.
Defendant McKay, a member of the Rolla Board of Education, is entitled to official immunity on plaintiff's state-law negligence claim. Accordingly, defendants' motion for summary judgment on Count X of the complaint is granted as to defendant McKay only, and denied as to defendants Berkbuegler and King. McKay, of course, remains a defendant on Count V.
Accordingly,
IT IS HEREBY ORDERED that defendants' motion for summary judgment [# 13] is denied on Counts IV and V, and denied on Count X as it relates to defendants King and Berkbuegler;
IT IS FURTHER ORDERED that defendants' motion for summary judgment is granted on Count X with respect to defendant McKay only, and the Court dismisses Count X against defendant McKay, with prejudice.

MEMORANDUM AND ORDER ON MOTION TO RECONSIDER OR CERTIFY APPEAL
This matter is before the Court on defendants' motion to reconsider, or in the alternative, to amend to permit interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Plaintiff consents to the certification of the Court's order for interlocutory appeal.
On January 5, 1996, the Court entered an order pursuant to defendants' motion for summary judgment holding that (1) school districts are strictly liable under Title IX for intentional discrimination by a teacher or other agent (Count IV), (2) plaintiff could state a claim under § 1983, but only under the theory that defendants failed to train teachers regarding the constitutional rights of students to be free from sexual abuse and other violations of bodily integrity (Count V) and (3) the principal and superintendent were not immune from plaintiff's state negligence claim on the basis of official immunity, but a member of the school board was entitled to official immunity (Count X). The relevant facts are contained in the Court's order. The Court is not convinced by the arguments contained in defendants' memorandum in support of their motion for reconsideration, and will deny the motion for reconsideration. However, the Court finds that the issues decided in the January 5, 1996 order are appropriate for interlocutory appeal.
Section 1292(b) allows a district court to indicate that an otherwise non-appealable determination is appropriate for immediate appeal if three criteria are satisfied. 28 U.S.C. § 1292(b). Under § 1292(b), the district court must find that: (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) certification will materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); see also White v. Nix, 43 F.3d 374, 377 (8th Cir.1994).
Each of the three legal issues decided in the Court's January 5, 1996 order  liability under Title IX, failure to train under § 1983, and official immunity  are controlling questions of law. "A legal question of the type referred to in § 1292(b) contrasts with a `matter for the discretion of the trial court.'" White, 43 F.3d at 377. This Court, in its order regarding defendants' motion for summary judgment, interpreted the relevant statutes and case law and reached legal conclusions as to the applicable standards. The Court did not merely exercise its discretion.
In addition, the three substantive issues each involve "substantial ground for difference of opinion." As the relevant order itself indicates, the Court's Title IX liability determination is inconsistent with many other cases, and this Court interpreted Title IX and the Supreme Court's decision in Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), differently than other courts. The second issue involves a novel question of law: whether schools have a responsibility under *1434 § 1983 to train teachers to prevent sexual harassment in light of students' constitutional right to be free from sexual abuse and other violations of bodily integrity. Finally, the Court noted in its summary judgment order that at least four district courts in Missouri have, without explanation, reached a different conclusion than this Court's conclusion regarding the application of official immunity to school administrators. The Eighth Circuit Court of Appeals has not directly addressed any of these three issues.
The Court finds that the certification of these three issues would also "materially advance the ultimate termination of the litigation." The litigation will not be conducted in the same manner regardless of the resolution of these issues because each of the issues goes to the heart of some or all of the defendants' liability. Cf. White, 43 F.3d at 378-79 (resolution of discovery dispute would not materially advance this litigation). This Court's finding that the school district is strictly liable under Title IX particularly changes the nature of the trial. If this Court's holding is affirmed, the parties need not address liability under Title IX. Resolution of all three issues will affect the theories to be pursued at trial, and might also significantly alter the parties' positions on settlement. In addition, reversal of the Court's holdings after trial would require the parties to present different evidence in a new trial. In sum, the litigation will not be conducted in the same manner regardless of whether the Eighth Circuit decides to permit this appeal.
Finally, due to the global nature of the issues certified for interlocutory appeal, the Court will stay all district court proceedings while the appeal from the summary judgment order is pending.
Accordingly,
IT IS HEREBY ORDERED that defendants' motion to reconsider [# 44-1], or in the alternative, to amend to permit interlocutory appeal pursuant to 28 U.S.C. § 1292(b) [# 44-2] is denied with respect to reconsideration and granted with respect to certification for interlocutory appeal.
IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1292(b), this Court's January 5, 1996 order denying defendants' summary judgment in all respects on Counts IV and V, denying summary judgment to defendants Berkbuegler and King on Count X, and granting summary judgment to defendant McKay based on official immunity under Count X, is certified for interlocutory appeal based on the Court's finding that these determinations each involve controlling questions of law as to which there is substantial ground for difference of opinion, and that an immediate appeal of these determinations will materially advance the ultimate termination of this litigation.
IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1292(b), all proceedings in this Court shall be stayed pending the appeal taken pursuant to this order.
NOTES
[1] Plaintiff's complaint does not allege that Count V is brought pursuant to 42 U.S.C. § 1983; plaintiff's brief in opposition to defendants' motion for summary judgment, however, does indicate that the claim is brought pursuant to that statute.
[2] Because this case involves the sexual harassment of a student by a teacher, the Court is not required to address the standard of school district liability for student harassment by peers under Title IX.
[3] Even if Title VII standards of liability were applied in this case, the school should be strictly liable for a sexual relationship between a teacher and a student under the "quid pro quo" analysis. Sexual intercourse between high school students and their teachers does not appear to fit at all into the "hostile environment" category. A teenaged student's susceptibility to coercion by an adult role model inherently contains the elements of "quid pro quo" activity which, under the current Title VII standards, invokes strict liability.
[4] In each of the two Eighth Circuit decisions involving "failure to train" in sexual misconduct contexts, the court found that the school district's policies were sufficient, and therefore did not specifically address the "implied notice" aspect of failure to train. See Larson v. Miller, 55 F.3d 1343, 1350 (8th Cir.), reh'g granted en banc, 67 F.3d 148 (1995); Thelma D., 934 F.2d at 934.
[5] Plaintiff's § 1983 claim is not based on sex discrimination in violation of Title IX. Therefore, the fact that students' right to an education free of sexual harassment under Title IX was not clearly established in 1987-88 is irrelevant.
[6] Several district courts that have addressed the official immunity doctrine under Missouri law have apparently presumed, without discussion, that school administrators are public officials. See, e.g., Mauzy v. Mexico Sch. Dist. No. 59, 878 F.Supp. 153, 156-57 (E.D.Mo.1995); Carlson v. Midway R-I Sch. Dist., 1994 WL 409590 (W.D.Mo. July 25, 1994); Brenner v. Sch. Dist. 47, 1987 WL 18819 (E.D.Mo. Jan. 12, 1987); Doe v. Special Sch. Dist. of St. Louis County, 637 F.Supp. 1138 (E.D.Mo.1986), aff'd on other grounds, 901 F.2d 642 (8th Cir.1990).