**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

Nos. 96-2426/2712

_____

Tien Lam, D.D.S.,                          *
                                           *
          Appellee/Cross-Appellant,   *
                                           *
United States of America,                  *
                                           *
          Intervenor                  *
                                           *  Appeal   From   the   United   States
District                                                                                
     v.                                    *  Court for the Western District of
                                           *   Missouri.
Curators of the University of Missouri,                              *
at Kansas City Dental School,         *
                                           *
          Appellant/Cross-Appellee.   *
                                           *

_____

Submitted: May 22, 1997
Filed: September 3, 1997

_____

Before BEAM, Circuit Judge, HENLEY, Senior Circuit Judge, and LOKEN,
     Circuit Judge.

_____

BEAM, Circuit Judge.

     The Curators of the University of Missouri (the University) appeal
the district court's denial of their motion for judgment as a matter of law
(JAML) on Tien Lam's claim of hostile environment discrimination in
education in violation of Title IX of the

Education Amendments of 1972. 20 U.S.C. §§ 1681-1688. Lam cross-appeals the district court's grant of summary judgment against her claim of quid pro quo discrimination in education. We affirm in part, reverse in part and remand for entry of judgment in favor of the University.

## I.    BACKGROUND

Tien Lam was a student at the University of Missouri Dental School, where Dr. Ho Wohn Kim was a clinical instructor. Kim did not "teach" in the traditional sense: he did not lecture, test, or assign grades to students. His primary duties consisted of assisting students in the University's oral surgery clinic, although he did not determine whether students passed or failed their oral surgery rotation. In addition to his work for the University, Kim maintained a private dental practice that was not affiliated with the school. Kim, without the knowledge of the dental school, hired Lam to assist him in his private practice on two different dates. The first time Lam worked at Kim's office was uneventful. However, on the second occasion Kim forcibly embraced Lam and kissed her. Lam rejected Kim's overtures and fled the office.

Several days later, Lam notified the University of the incident, and complained that Kim had been trying to telephone and visit her. University officials told Kim not to contact Lam, and informed him that they were undertaking an investigation of Lam's allegations. Kim was instructed not to return to work until that investigation had been completed. Kim then resigned.

The assault triggered memories of sexual abuse Lam had suffered while fleeing Viet Nam. In the weeks following the incident, Lam became increasingly depressed and was eventually hospitalized. Upon her return to school, the University allowed Lam to complete missed assignments and reschedule examinations. Later that semester, in a course unrelated to Kim or the oral surgery clinic, instructors showed an

instructional videotape containing sexual innuendos.  Lam told her advisor that the tape offended her, but did not complain to the University or the instructors.

Lam filed suit against the University,[1] alleging both hostile environment and quid pro quo discrimination in education.  The University moved for summary judgment on both claims.  The district court granted judgment on the quid pro quo claim, and denied it on the hostile environment theory.  That claim was tried to a jury, which returned a verdict in Lam's favor.  The University timely renewed its motion for JAML, and, when it was denied, initiated this appeal.

## II.  DISCUSSION

### A.    Eleventh Amendment Immunity

After the University filed its Notice of Appeal in this case, Seminole Tribe of Florida v. Florida, 116 S. Ct. 1114 (1996) was decided. The University then filed a Motion for Summary Reversal and Vacation of Judgment, arguing that Seminole Tribe had divested the federal courts of subject matter jurisdiction over Title IX suits.  In Crawford v. Davis, 109 F.3d 1281, 1282-83 (8th Cir. 1997), we held that under Seminole Tribe, the Eleventh Amendment does not deprive the federal courts of jurisdiction to hear Title IX claims.  We are bound by Crawford.

### B.    Judgment as a Matter of Law

We review a court's grant or denial of JAML de novo, using the same standards as the trial court.  Wood v. Minnesota Mining and Mfg. Co., 112 F.3d 306, 309 (8th Cir. 1997).  JAML is appropriate when "a party has been fully heard on an issue and

---

[1]Lam's initial complaint also named Kim as a defendant.  Before trial, Lam settled with Kim, and he was dismissed from the lawsuit.

there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50 (a)(1).

In order for sex discrimination to be actionable under Title IX, the discrimination must be connected with an "education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The University argues that Lam never established the predicate nexus between Kim's assault and an "education program or activity" of the University. The language "education program or activity" was added to Title IX by Congress in 1987 to make clear that discrimination is prohibited throughout entire agencies or institutions if any part receives federal financial assistance. See Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, 102 Stat. 28 (codified at 20 U.S.C. § 1681 (a)). The Senate Report accompanying the Amendment explained that the revision is meant to "include, but is not limited to . . . traditional educational operations, faculty and student housing, campus shuttle bus service, campus restaurants, the bookstore, and other commercial activities." S. Rep. No. 100-64, at 17 (1987), reprinted in 1988 U.S.C.C.A.N. 3, 19. All of the activities listed are controlled by and inure some benefit to the institution.

Here, it is undisputed that Kim conferred no benefit to the Dental School by operating a separate, competing dental clinic. Correspondingly, the University exercised no control over the conduct of business at Kim's office. The University did not provide staff, funding or any other support. There was no University requirement of private clinical work for students like Lam. In fact, Lam testified that she kept her work a secret from the University. We hold that under these facts, Kim's independent, private dental practice did not constitute a program or activity of the University.

Lam attempts to persuade us that liability is nevertheless proper in this case by citing precedent in which she claims courts allowed Title IX claims involving off-campus assaults. However, every case cited involved allegations of conduct occurring either on campus or during some activity of the institution. See, e.g., Franklin v.

Gwinnett County Pub. Sch., 503 U.S. 60, 63 (1992) (alleging that student was removed from class for coercive intercourse on school premises); Bolon v. Rolla Pub. Sch., 917 F. Supp. 1423, 1427 (E.D. Mo. 1996) (alleging sexual contact during school); Nelson v. Almont Community Sch., 931 F. Supp. 1345, 1348-51 (E.D. Mich. 1996) (alleging sexual contact on school premises and during school-sponsored activities); Patricia H. v. Berkley Unified Sch. Dist., 830 F. Supp 1288, 1296-97 (N.D. Cal. 1993) (alleging that continued presence at school of teacher who had previously molested plaintiffs created hostile environment). The assault by Kim did not occur in school or during any University-sponsored activity. It therefore cannot be the predicate for institutional liability under Title IX.

Lam did present other evidence of a hostile environment at the Dental School in the form of the offensive videotape. However, a necessary element of a claim under Title IX for hostile environment sexual harassment is that "the harassment was sufficiently severe or pervasive so as to alter the conditions of her education and create an abusive educational environment." Kinman v. Omaha Public Sch. Dist., 94 F.3d 463, 468 (8th Cir. 1996). This single exposure to a distasteful videotape is not severe or pervasive enough to create a hostile education environment. Montandon v. Farmland Indus. Inc., 116 F.3d 355, 358 (8th Cir. 1997) (exposure to offensive behavior by supervisor on one instance does not satisfy "severe or pervasive" requirement under Title VII).

Since Lam did not establish that Kim's assault was connected to an "education program or activity," she cannot rely on that incident to state a claim under Title IX. Without the Kim assault, the remaining incident of harassment was insufficiently severe or pervasive to prove an element of her prima facie case.[2] The district court erred in failing to grant the University JAML on Lam's hostile education environment claim.

---

[2]This conclusion makes it unnecessary for us to reach the remainder of the University's arguments on appeal.

Finally, Lam cross-appeals the district court's grant of summary judgment to the University on her quid pro quo claim. Quid pro quo harassment under Title IX arises when the receipt of academic benefits is conditioned on acquiescence to sexual advances. Kinman, 94 F.3d at 467. Lam reports that she believed Kim would help her at school if she worked for him at his private clinic. However, Lam's subjective hopes of special treatment are legally insufficient to state a claim of quid pro quo discrimination. See Cram v. Lamson & Sessions Co., 49 F.3d 466, 474 (8th Cir. 1995) (plaintiff's subjective belief that defendant had threatened job retaliation did not state a claim of quid pro quo sexual harassment). Lam failed to prove that she was denied any educational benefit because of her refusal to submit to Kim's sexual advances. In fact, since Kim had no authority over her grades, exams, or course work, Lam failed to establish that Kim even had the ability impose an educational detriment. The district court correctly granted JAML on this issue.

## III. CONCLUSION

For the foregoing reasons the district court's order granting summary judgment on Lam's quid pro quo claim is affirmed and its order denying the University's motion for JAML is reversed.[3] The case is remanded with instructions to enter judgment for the University on all claims.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]Since Lam is no longer a prevailing party, we also vacate the district court's award of costs and attorneys' fees.