**Jane DOE, a minor under the age of eighteen, by her parents and next friends, John Doe and Mary Doe; John Doe and Mary Doe, individually; Sally Poe, a minor under the age of eighteen, by her parents and next friends, Richard Poe and Joan Poe; and Richard Poe and Joan Poe, individually, Plaintiffs,**

v.

**BERKELEY COUNTY SCHOOL DISTRICT, Defendant.**

No. 2:96–1518–18.

United States District Court, D. South Carolina, Charleston Division.

Dec. 9, 1997.

Richard Rosen, Charleston, SC, for Plaintiffs.

Kenneth Childs, Columbia, SC, Geoffrey R. Bonham, Columbia, SC, Ronald James Tryon, Columbia, SC, for Defendants.

### ORDER

NORTON, District Judge.

This action is before the court on Defendant's Motion for Summary Judgment.

#### A. Background

This is a sexual discrimination action involving allegations of a substitute teacher's sexual misconduct with two students. Plaintiffs are former students of Goose Creek High School ("GCHS").[1] They allege that, while ninth-grade students, they were se-

---

1. Although several people have brought this suit, throughout this memorandum "Plaintiffs" is used generally to refer to Jane Doe and Sally Poe.

duced by and had sex with Tony Pimentel ("Pimentel"), who was then a substitute teacher employed by Berkeley County School District ("Defendant").

Pimentel was an education major at Charleston Southern University ("CSU") during the 1994–95 school year. In the fall semester of 1994, he was assigned to GCHS to student teach physical education classes for six weeks.

While Pimentel was student teaching several people became concerned that he might encounter problems with female students. For example, the vice-principal and the guidance counselor noticed that many female students were attracted to Pimentel, and they each individually cautioned him to be careful around the female students. (Loftis Depo. at 61–62; Parker Depo. at 32, 42).

Plaintiffs contend that, during Pimentel's student teaching at GCHS, he began his "pattern of sexually inappropriate behavior towards students." (Plaintiff's Opp. Memo. at 4). Pimentel allegedly flirted with his female students during class. (Jeffrey Depo. at 34–35). One student, Nickie Bihner, told a friend that Pimentel made sexual comments to her. (Jeffrey Depo. at 38, 46).

Plaintiffs further allege Pimentel made sexually inappropriate comments to Tonette Vargo. Tonette's mother, Ms. Williamson, complained to vice-principal Darius Loftis that Tonette said that Pimentel had made sexual comments to her. (Williamson Depo. at 53–54). Plaintiffs assert that Loftis ineffectively resolved the problem because he did not speak with Pimentel's mentor, did not inform the principal, and did not make any notes in Pimentel's file. Furthermore, he did not tell Tonette or Ms. Williamson that the Office of Civil Rights was available to help.

Defendant offers a different view of Loftis' resolution of the problem. Loftis called Pimentel into his office to discuss the allegations wherein Pimentel explained his comments were not sexual in nature but were in reference to Tonette's interest in his car.[2] (Loftis Depo. at 61, 64). Upon hearing Pi-

mentel's explanation, Loftis reminded Pimentel that students are gullible and that he needed to be careful of what he said. Loftis contacted Ms. Williamson and described his discussion with Pimentel. He asked if she wanted Pimentel to apologize to Tonette and explain he did not seriously mean what Tonette thought he said. Ms. Williamson agreed that an apology was a good idea. (Loftis Depo. at 62) Pimentel apologized. (Loftis Depo. at 62).

Ms. Williamson's complaint was the only complaint about Pimentel that any student or parent had brought to the attention of Defendant during the school year. After completing his student teaching, Pimentel received an "excellent" evaluation. (Gaskins Depo. at 16). Consequently, Defendant often hired Pimentel to substitute at GCHS during the spring of 1995.

In September of 1995, when Plaintiffs began the tenth grade at GCHS, Plaintiff Jane Doe's stepfather, John Doe, informed Dr. Doug Allen, Assistant Superintendent of High Schools for the District, of Jane Doe's allegations that she had slept with Pimentel. Dr. Allen and Superintendent Jamie Hyman immediately assigned Jeff McWhorter ("McWhorter"), the District's Public Safety Officer, to investigate the allegations.

According to Plaintiff Jane Doe, she found Pimentel to be an extremely attractive man and wrote him a note with her telephone number on it asking to babysit for his niece who lived with Pimentel and his mother. (Conroy Depo. II at 62–63). Jane Doe alleges she spoke with Pimentel over the telephone whereupon he said, "You know I'm not calling about baby-sitting don't you?" (Conroy Depo. II at 63–65). From that point forward, she and Pimentel communicated with each other in an extremely clandestine fashion. (Conroy Depo. II at 75, 80).

Jane Doe contends they engaged in a sexual relationship, which, at times involved her cutting class while Pimentel was not substituting. (Conroy Depo. II at 81, 86, 102–103). She claims they had sex six or seven times;

---

**2.** Pimentel claims he told Tonette that she could drive his car over to his place or come over to his place and drive his car.

each encounter was planned over the telephone in advance; most encounters occurred at Pimentel's house; and each encounter occurred when Pimentel was not substituting. (Conroy Depo. II at 95–109).

Sally Poe became involved after Doe and Pimentel began discussing having a menage a trois. (Conroy Depo. II at 141).[3] Doe approached Poe about the possibility, and she agreed. (Conroy Depo. II at 155–57). One morning, Doe and Poe left school grounds before school started and went to Pimentel's house. (Conroy Depo. II at 158–59). Sally Poe and Pimentel engaged in sexual intercourse alone. (J. Jeffery Depo. at 68–69). Afterward, Poe never had any discussions with Pimentel of a sexual nature. (J. Jeffery Depo. at 77).

Poe did not tell any school official, nor her parents, nor the police, nor anyone else about her alleged sexual encounter with Pimentel until Plaintiffs' investigator appeared at her door in December of 1995. (J. Jeffery Depo. at 78–79). Similarly, Jane Doe did not tell anyone about the alleged sexual encounters with Pimentel until she told her step-father. After her step-father notified the school, Defendant commenced its investigation immediately.

Plaintiffs filed suit against Defendant, alleging causes of action under Title IX for sexual discrimination, under § 1983 for constitutional violations, and under state law. At a hearing on November 5, 1997, this court granted Defendant's Motion for Summary Judgment with respect to Plaintiffs' § 1983 claim. The court will now address the remaining Title IX claim and pendent state law claims.

### B. Analysis

A party moving for summary judgment is entitled to judgment when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of showing that there is no genuine issue of material fact and that he is

entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). When determining whether there is an issue for trial, the court must view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

Plaintiffs have asserted a cause of action under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688, which provides, in pertinent part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

Title IX is enforceable through an implied private right of action. *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Furthermore, a damages remedy is available in such an action. *Franklin v. Gwinnett County Pub. Schs.,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).

It is well-established, and Defendant agrees, that Pimentel's sexual conduct with Plaintiffs constituted discrimination based on sex under Title IX. *Smith v. Metropolitan School District Perry Township,* 128 F.3d 1014, 1021 (7th Cir.1997) (determining that sexual harassment or abuse of a student by a teacher constitutes sex discrimination under Title IX) (citations omitted); *see also* Office for Civil Rights, Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties ("OCR Guidelines") 62 Fed.Reg. 12034, 12039 (1997); *Kadiki v. Virginia Commonwealth Univ.,* 892 F.Supp. 746 (E.D.Va.1995).

Title IX prohibits discrimination occurring under any educational program or activity. Title IX's definition of "program or activity"

---

**3.** Pimentel allegedly made overtures towards Sally Poe in the spring 1995 semester. Once, while substituting, Pimentel would not let Poe go to the restroom until she promised to "do something" for him. (J. Jeffery Depo. at 99–100).

includes "all operations of a local educational agency ... or other school system." 20 U.S.C. § 1687. "Local educational agency" is defined as "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary or secondary schools in a city, county ... or other political subdivision of a State...." 20 U.S.C. § 8801. Berkeley County School District does not dispute that it is a proper defendant in this case. *See* S.C.Code § 59–1–160 and § 59–17–10.

Courts are divided on the proper analysis to employ when determining institutional liability of a school district under Title IX for a teacher's sexual harassment of a student. Several circuits which have addressed the issue have relied on a Title VII liability standard. *See Kinman v. Omaha Pub. Sch. Dist.,* 94 F.3d 463, 469 (8th Cir.1996); *Seamons v. Snow,* 84 F.3d 1226, 1230–31 (10th Cir.1996); *Davis v. Monroe County Bd. Of Educ.,* 74 F.3d 1186, 1192 (11th Cir.), *vacated pending rehearing en banc,* 91 F.3d 1418 (11th Cir.1996); *Murray v. New York Univ. College of Dentistry,* 57 F.3d 243, 248 (2d Cir.1995). Another possibility, supported by the Department of Education's Office of Civil Rights, is to determine liability under agency principles. OCR Guidelines, 62 Fed.Reg. 12034, 12039. At least one court has recognized strict liability. *See Bolon v. Rolla Public Schools,* 917 F.Supp. 1423 (E.D.Mo.1996). And, the Fifth and Seventh Circuits require actual knowledge by a school official with supervisory authority. *Smith,* 128 F.3d 1014, 1033 (quoting *Rosa H. v. San Elizario Indep. Sch. Dist.,* 106 F.3d 648, 660 (5th Cir.1997). This is an issue of first impression for this court.

While there is considerable disagreement on the proper analysis to apply in teacher-student sexual discrimination cases, the Seventh Circuit Court of Appeals has been the most recent court to address the issue. *See Smith,* 128 F.3d 1014. *Smith,* similar to this case, involved a highly secretive sexual relationship between a 17–year–old high school senior and a teacher at the high school. The senior told no one about the affair until it

was over. She and her parents subsequently sued the school district and others.

■ Because the case was one of first impression in the Seventh Circuit, the *Smith* plaintiffs advanced several theories of liability, including agency, Title VII, and strict liability. The Seventh Circuit Court of Appeals thoroughly and painstakingly analyzed the various theories and ultimately adopted a requirement of actual knowledge, rejecting the other theories as unsound. Specifically, the *Smith* court determined that "a school district is liable for teacher-student sexual harassment only if a school official who had actual knowledge of the abuse was invested by the school board with the duty to supervise the employee and the power to take action that would end such abuse and failed to do so." *Smith,* 128 F.3d at 1014, 1033 (quoting *Rosa H. v. San Elizario Indep. Sch. Dist.,* 106 F.3d 648, 660 (5th Cir.1997)).

While the Department of Education's Office for Civil Rights and other courts disagree with the requirement of actual knowledge, this court, relying on the Seventh Circuit's persuasive decision in *Smith,* finds no statutory basis in Title IX for applying agency or Title VII principles to teacher-student sexual harassment claims. *See Smith,* 128 F.3d at 1023–24. Nor is there any support in Title IX for the imposition of strict liability. *See id.* 128 F.3d at 1029–30. This court is in agreement with the Seventh Circuit's decision in *Smith* and sees no reason to repeat its exhaustive analysis. Accordingly, this court adopts the holding in *Smith* that a school district is liable for teacher-student sexual harassment only if a school official who had actual knowledge of the abuse was invested by the school board with the duty to supervise the employee and the power to take action that would end such abuse and failed to do so.

■ This court certainly does not condone Pimentel's alleged actions, but even in the light most favorable to Plaintiffs there is no evidence that any supervisory school official in this case had actual knowledge of the highly secretive relationship alleged between Pimentel and Plaintiffs until Plaintiff Jane Doe's stepfather, John Doe, informed Dr. Doug Allen, Assistant Superintendent of

High Schools for the District. At that point, the alleged relationships had ended and Defendant immediately began an extensive investigation. Accordingly, Defendant is not liable under Title IX and its Motion for Summary Judgment on that cause of action is granted.

Having earlier granted Defendant's Motion for Summary Judgment on Plaintiffs' § 1983 claim, this court no longer has pendent jurisdiction over Plaintiffs' state law claims. Accordingly, Plaintiffs' state law claims are dismissed without prejudice.

It is therefore,

**ORDERED,** that Defendant's Motion for Summary Judgment be **GRANTED** on Plaintiffs' Title IX claim; and Plaintiffs' state law claims be **DISMISSED** without prejudice; and judgment be granted for Defendant.

**AND IT IS SO ORDERED.**